No. 41,138

THE S. J. SAFFORD & SON LUMBER COMPANY, INC., a corporation, *Appellant*, v. MARLIN KERLEY and MARY E. KERLEY, *Appellees*; WILLIAM WHITESIDE, ROBERT NELSON, CUSTOM HOMES, INC., a Kansas Corporation, FIRST KANSAS LIFE INSURANCE COMPANY, a Kansas Corporation, *Defendants*.

(334 P. 2d 884)

Opinion filed January 24, 1959.

*R. A. Munroe*, of Augusta, argued the cause and was on the briefs for the appellant.

*Alvin D. Herrington*, of Wichita, argued the cause, and *Getto McDonald, William Tinker, Arthur W. Skaer, Hugh P. Quinn, William Porter* and *John E. Lancelot*, all of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

WERTZ, J.: This was an action by the S. J. Safford & Son Lumber Company, Inc. (hereinafter referred to as plaintiff), a subcontractor, to reinstate, reform and foreclose a materialman's lien. The trial court sustained defendants' demurrer to the petition on the ground that it failed to state a cause of action, and plaintiff appeals.

Plaintiff (appellant) alleged that defendants (appellees) Marlin Kerley and Mary E. Kerley were owners of two tracts of land in

Sedgwick county, which for convenience will be referred to as tract No. 1 and tract No. 2. The Kerleys contracted with defendant William Whiteside for the construction of buildings and other improvements on tract No. 2, which contract was subsequently assigned to defendant Custom Homes, Inc. Under contract with Custom Homes, Inc., plaintiff furnished materials for the construction on tract No. 2. The last of such materials was furnished on March 7, 1957.

As a result of other negotiations defendant Robert Nelson, as agent for the Kerleys, was in possession of $2,500, which he was instructed to pay plaintiff in full discharge of the Kerleys' indebtedness for materials furnished. On April 10, 1957, Nelson admitted to plaintiff that he had converted the $2,500 to his own use. He refused thereafter to make payment to the plaintiff or the Kerleys.

On May 1, 1957, the Kerleys conveyed tract No. 1 to Glen D. Cox and Velda J. Cox. The deed for the property was filed with the Sedgwick county register of deeds on May 2, 1957.

On May 4, 1957, plaintiff's office manager was contacted by Mary Kerley, at which time she was advised plaintiff was filing a materialman's lien to secure the payment of the balance of $2,500 due, and she was asked to furnish a legal description of the premises. By mistake, Mary Kerley furnished a description of tract No. 1, rather than tract No. 2. On May 6, 1957, relying on this representation, plaintiff filed a materialman's lien on tract No. 1.

In addition to other requirements of the applicable statutes, plaintiff set forth in its lien statement that it had furnished materials for the erection of buildings and other improvements on specifically described real property, the legal description of which conformed to the legal description of tract No. 1. Plaintiff then claimed a first and prior lien for materials furnished to the mentioned premises.

In July, 1957, plaintiff discovered its lien was filed by mistake against tract No. 1. Upon demand by William Whiteside, who was then constructing a residence on tract No. 1 for the owners thereof, plaintiff, on July 13, 1957, released of record its lien insofar as it pertained to tract No. 1. On October 1, 1957, plaintiff filed this action to reinstate, reform and restore the lien to tract No. 2, and foreclose the lien.

Plaintiff claims that its lien was filed on the wrong property by reason of a mutual mistake of fact, and that it released the lien

insofar as it pertained to tract No. 1, which was the only property described in the lien, but that it made no overt act toward releasing the lien insofar as it pertained to tract No. 2. Plaintiff maintains it is entitled to amend its lien statement to correctly describe the property by reason of G. S. 1949, 60-1405 and a long line of Kansas decisions permitting amendment of descriptions under this statutory provision. In the alternative, plaintiff claims it has a common law right to reformation of its lien statement because the error in description resulted from a mutual mistake of fact.

We cannot accept plaintiff's contentions. At the outset, it is not necessary for us to discuss whether a misdescription of property to which a lien attaches may be corrected by amendment, or whether the misdescription renders the lien statement fatally defective and hence not susceptible of amendment. G. S. 1949, 60-1403 provides for the filing of mechanics' or materialmen's liens by subcontractors within sixty days after the date upon which material was last furnished or labor last performed. Plaintiff's lien statement on tract No. 1 was filed May 6, 1957, within the statutory period. Subsequently and on demand of the contractor for the owners of tract No. 1, plaintiff released its lien on July 13, 1957. Although there is no copy of the release in the record and plaintiff maintains its lien was released only as it pertained to tract No. 1, it is clear to us that at the time of release the only lien in effect was the lien on tract No. 1. Having released the only lien it had filed, there is no lien in existence in favor of the plaintiff and therefore none susceptible of amendment or reformation.

In *In re Cohen*, 204 N. Y. S. 200, 122 Misc. Rep. 451, a mechanic's lien filed against an owner was discharged for failure to prosecute. Later, the claimant filed another notice of lien, which the owner sought to discharge on the theory that whatever rights the lienor had were lost by the discharge of the original notice. The court held that when the second lien was filed the prior lien had ceased to exist. Although there might be a right to file corrected or amended notices of lien, such corrections or amendments would be allowed only while the first lien was in existence. (The right to amend under G. S. 1949, 60-1405 contemplates that there is a lien on file.) Since the lien was no longer in existence, the claimant's remedy against the property had therefore disappeared.

In the instant case no lien statement was ever filed against tract No. 2 or any part thereof. The release of July 13, 1957, extinguished

all lien rights claimed by plaintiff. To permit "amendment" or "reformation" would place the court in the position of creating a lien, where none was in effect, long after the expiration of the statutory period for obtaining liens. It follows that the judgment of the trial court is affirmed.

It is so ordered.