No. 41,514

LOGAN-MOORE LUMBER COMPANY, a Corporation, *Appellee*, v. JAMES W. BLACK and SARA U. BLACK, *Appellants*, and CAPITAL FEDERAL SAVINGS AND LOAN ASSOCIATION, a Corporation, and LELAND LEWIS, *Appellees*.

(347 P. 2d 438)

Opinion filed December 12, 1959.

*O. K. Petefish* and *James L. Postma,* both of Lawrence, argued the cause, and *C. C. Stewart,* also of Lawrence, was with them on the brief for appellants.

*John J. Riling,* of Lawrence, argued the cause, and *Eugene C. Riling,* also of Lawrence, was with him on the brief for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to foreclose a mechanic's lien. The appeal is from a decision of the trial court amending the lien statement and foreclosing the lien.

The principal question is whether on the facts and circumstances herein presented a mechanic's lien statement may be amended to change the names of the owners of the property after the statutory time within which the claimant must file his lien statement has expired.

Without a detailed report of the proceedings in this action, it may be said the appellants have protected their rights in the trial court on the principal question at every point in the proceedings.

The lien statement filed by the plaintiff on the 5th day of March, 1956, with the clerk of the district court of Douglas County was prepared and signed by Harold Kueker, Jr., manager of the Logan-Moore Lumber Company, plaintiff below, and the format used in preparation of the lien statement is identical with the one quoted in *Logan-Moore Lumber Co. v. Foley,* 181 Kan. 984, 317 P. 2d 467. The property described in the lien statement is Lot 6, Block 8, Prairie Acres Subdivision of Park Hill Addition to the City of Lawrence, Kansas. The total amount claimed is $3,074.83 with interest from and after January 5, 1956, and the paragraphs in the lien statement material to a decision herein read as follows:

"Second: That the name of the owner of said premises is James W. and Sara U. Black his wife.

.     .     .     .     .     .     .     .     .     .     .     .

"Sixth: That said material was furnished under a certain contract and running account, made and entered into with the undersigned, *by said owner,* of the above described land.

"Seventh: That said material, on account of which this lien is claimed, was furnished at intervals as shown by said statement of items hereto attached and marked Exhibit 'A' from and including the 10th day of June, 1955 and the 5th day of January, 1956.

.     .     .     .     .     .     .     .     .     .     .     .

"Ninth: That the last item of said account was furnished by the claimant to the said owner on the 5th day of January, 1956.

"Tenth: That the items of merchandise furnished as shown by Exhibit 'A' were charged for at reasonable prices and the same were furnished *at the instance and request of said owner.*" (Emphasis added.)

Immediately upon the filing of the above lien statement the plaintiff caused a letter to be mailed to the owners named in the lien statement as follows:

"LOGAN-MOORE LUMBER COMPANY
627 Massachusetts St.          Phone 113
Lawrence, Kansas
March 5, 1956

"Mr. James Black
241 Nebraska
Lawrence, Kansas
Dear Mr. Black:

"We have as of this date filed a 'Mechanic's Lien' on your property. The amount of the lien being $3074.83. This is the amount due for material purchased by Mr. Leland Lewis for the construction of your residence.

"Mr. Lewis was in our office today and he stated he would be able to pay this bill within 30 days. However due to company policy we are not allowed to let our lien time expire. I am sure Mr. Lewis will be able to take care of this matter if given a little more time.

Sincerely yours,
Harold Kueker, Jr."

At this point it should be stated Leland Lewis was the builder of the house upon the lot described in the lien statement and is the same person who contracted to build the dwelling house in the *Foley* case. In that case the decision turned upon an attempt to amend the lien statement to name Lewis as the contractor who entered into a contract with the owners (the Foleys) for construction of a dwelling house and improvements.

The trial court in a detailed memorandum decision set forth the chronology of events leading to and including the trial of the case. It designated these as its findings and based its conclusions upon them.

The trial court found that sometime prior to May 25, 1955, James W. Black and his wife, Sara U. Black, selected the lot in question as the site for a home which they desired to have built. The lot was then owned by Dolph Simons. At this time Leland Lewis was engaged in the business of constructing houses under contract.

On May 25, 1955, Lewis and his wife, Edith, entered into a contract with the Blacks by the terms of which Lewis agreed to construct a house on the lot according to plans and specifications approved by the Blacks and to sell the lot and house to the Blacks for

the sum of $22,000. The Blacks agreed to pay $2,500 in escrow to the Gill Agency as a down payment and authorize the escrow agent to advance said down payment to Lewis for the purchase price of the lot. The Blacks also agreed to determine to the best of their abilities that a loan of $16,500, secured by a mortgage on the lot and the house to be built, could be obtained prior to commencement of construction of the house. Lewis agreed to place a deed to the lot in escrow with the Gill Agency for delivery to the Blacks upon completion of the contract.

On June 2, 1955, the Blacks deposited a $2,500 payment in escrow as agreed, and the escrow agent made such money available to Lewis for the purchase of the lot as provided in the contract.

On June 8, 1955, Simons and his wife deeded the lot to Lewis and his wife, and on the same date Lewis and his wife executed a mortgage thereon in the sum of $15,000 to the Capitol Federal Savings and Loan Association, the mortgagee and one of the appellees herein.

On June 10, 1955, the Logan-Moore Lumber Company, the plaintiff below and one of the appellees herein, *under contract with Lewis began supplying building materials for the construction of the house which Lewis had contracted to build and sell to the Blacks.* About this time and during the time Lewis was building the house in question, the Blacks called at the yard of the lumber company and from time to time made selections of certain materials which Lewis ordered and used in the construction of the house.

On June 22, 1955, Lewis and his wife executed a deed covering the lot to the Blacks, which was made to correct an error in a previous deed executed on June 8, 1955. The June 22nd deed was placed in escrow with the Gill Agency pursuant to the May 25th contract.

On November 7, 1955, the Blacks began moving into the house and the move was completed the following day, when an officer of the mortgagee made a routine inspection of the progress of the construction and found the house being built on the lot to be about 90 per cent completed.

On November 29, 1955, *the lumber company made its last delivery of materials to the lot under the contract it had with Lewis.*

On December 10, 1955, Lewis was required to begin making monthly payments according to the terms of the note and mortgage which he had given to the mortgagee. On this date the contract

between Lewis and the Blacks was closed at the local office of the mortgagee, to which office the Gill Agency had made delivery of the deed executed by Lewis and his wife on the 22nd day of June, 1955. This deed was recorded on December 16, 1955. The Blacks assumed the amount of $14,000 which was still due on the mortgage after a payment thereon of $1,000 made on the closing date, and on December 12, 1955, the mortgagee released Lewis and his wife from liability on said note and mortgage.

On March 5, 1956, the lumber company filed a mechanic's lien against the property in question in which it named the Blacks as the owners of the property and stated that the materials for which payment had not been made were supplied under contract with the Blacks.

On April 14, 1956, Lewis filed a petition in bankruptcy.

On July 2, 1956, the lumber company brought this action to foreclose its mechanic's lien and *its petition requested leave to amend its lien statement* to show that Lewis was the owner of the property at the time the lumber company contracted to supply materials and to show that Lewis continued to be the owner during the time all the items described in the lien statement were furnished except for the last item, and this notwithstanding the fact that the Blacks were the owners at the time the lien statement was filed.

On November 27, 1956, the court reserved its ruling on the lumber company's pending motion to amend its lien statement until the trial of the case, relying upon *Lumber Co. v. Blanch*, 107 Kan. 459, 462, 192 Pac. 742. (The lumber company filed a motion October 2, 1956, to amend the lien statement alleging Lewis was the *contractor* who entered into a contract with the Blacks as owners. This motion was supported by an argument of the lumber company on October 5th. The court took the matter under advisement and overruled the motion at the lumber company's request on November 9, 1956. [See, *Logan-Moore Lumber Co. v. Foley*, supra.] The motion upon which the court reserved ruling November 27th was filed October 17, 1956, seeking to amend the lien statement as alleged in the petition.)

On January 4, 1957, the mortgagee filed its answer and cross petition, in which it alleged its mortgage was a first and prior lien on the lot in question. It stated that the payments on the mortgage were not in default, and in the event the court should find the lumber company had a valid lien it requested that its mortgage be declared a first and prior lien on the real estate in question, and

further that if the lien be foreclosed, the real estate be sold subject to the lien created by the mortgage. ' (The parties concede that the mortgagee has a first and prior lien, and that the foregoing, contrary to the trial court's finding, was the request of the mortgagee.)

On February 8, 1957, a certified copy of the discharge in bankruptcy of Leland Lewis was filed, the date of such discharge being August 28, 1956.

On July 2, 1958, the Blacks answered placing in issue the allegations of the lumber company's petition as amended. (Relevant to this appeal is a denial of the legal sufficiency of the lien filed by the lumber company.)

The conclusions of the trial court insofar as they are material to the issues herein are:

"1. The vendor [Lewis] could and did subject the property in question to a mechanic's lien. (See: *Hannon v. Handy* [Conn.], 47 A. L. R. 259 and note beginning at p. 263).

"2. The lienor's mechanic's lien statement is amended as requested in its petition and as amended is a valid lien against the property in question in the sum . . . [found to be due] and as such should be foreclosed . . ."

It is clear that Lewis and his wife, *as owners, could* subject the real estate in question to a mechanic's lien in favor of the lumber company prior to a conveyance of the property to the Blacks under the terms of the contract. It was held in *Hannan v. Handy,* 104 Conn. 653, 134 At. 71, 47 A. L. R. 259, cited by the trial court, that where an owner of real estate contracts to sell it to another and build a house on it for a single price, he continues to be the owner until the deed is given, so that he may charge the property with mechanics' liens without the necessity of notice to the person intending to purchase the property.

A careful study of the contract entered into by Lewis and his wife with the Blacks on the 25th day of May, 1955, leads us to conclude the trial court correctly interpreted the contract as calling for a total price of $22,000, including the lot and the dwelling house constructed thereon. This conclusion is further fortified by the findings of the trial court, which are supported by evidence, that title to the lot in question was in Lewis and his wife at the time materials were supplied by the lumber company up to and including November 29, 1955, when the last materials were furnished under the contract with Lewis.

In brief, the proposition may be stated: Materials were supplied by the lumber company to Lewis and his wife as owners of real

property for the purpose of constructing a dwelling thereon, but prior to the filing of the lien statement by the lumber company Lewis and his wife conveyed the property to the Blacks who then became the owners thereof. Upon filing the lien statement the Blacks were named as the owners with whom the lumber company contracted to supply the materials, and the question is whether the lien statement may be amended to substitute the names of Lewis and his wife, as owners, for the names of the Blacks after the expiration of the time for filing the lien.

Pertinent sections of our statute may be summarized or quoted as follows:

G. S. 1949, 60-1401, provides that any person who shall under a contract with the owner, or someone representing him, of any tract of land perform labor or furnish material for the erection of a building on the real property shall have a lien thereon for the value of such labor and material.

G. S. 1949, 60-1402, provides that anyone claiming a lien under the preceding section of the statute shall file his lien statement setting forth as nearly as practicable, the name of the owner, the name of the contractor, the name of the claimant, and a description of the property subject to the lien, *within four months after the date upon which material was last furnished under the contract.*

The lumber company in support of its contention that it was entitled to amend the lien statement, relies upon G. S. 1949, 60-1405, which provides in part:

". . . in case of action brought, any lien statement may be amended by leave of court in furtherance of justice *as pleadings may be in any matter,* except as to the amount claimed." (Emphasis added.)

The foregoing section of the statute has recently been before this court in *Thomasson v. Kirkpatrick,* 174 Kan. 52, 254 P. 2d 329; and in *Logan-Moore Lumber Co. v. Foley,* supra. Reference is made to these decisions and further discussion herein will proceed on the assumption the reader is familiar with these opinions.

The appellants contend the effect of permitting the lumber company to amend its lien statement to change the names of the owners is to permit the lien claimant to perfect a lien eleven months after material is last furnished. They rely upon 60-1405, *supra,* and upon G. S. 1949, 60-759, which provides:

"The court or judge may, before or after judgment, in furtherance of justice and on such terms as may be proper, *amend any pleading,* process or proceeding *by adding or striking out the name of any party,* or correcting a mistake

in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, *when such amendment does not change substantially the claim or defense;* and when any proceeding fails to conform in any respect to the provisions of this code, the court or judge may permit the same to be made conformable thereto by amendment." (Emphasis added.)

It is clear that a pleading, though filed in time against one party under the foregoing statute, cannot be amended after the expiration of the statute of limitations to name another party as a defendant. (*Anderson v. Railroad Co.,* 71 Kan. 453, 80 Pac. 946; *Garrity v. Board of Administration,* 99 Kan. 695, 162 Pac. 1167; *Challis v. Hartloff,* 133 Kan. 221, 299 Pac. 586; see, also, *Garney v. Railroad Co.,* 112 Kan. 823, 212 Pac. 659; *Lukens v. Payne,* 118 Kan. 547, 235 Pac. 841; and *Commercial Nat'l Bank v. Tucker,* 123 Kan. 214, 254 Pac. 1034.)

Can the authority of a court to amend a lien statement be greater than its authority to amend a petition?

A mechanic's lien is a creature of statute. In order to establish or enforce a lien the statute must be strictly pursued. (*McHenry v. McHenry,* 150 Kan. 498, 95 P. 2d 261; *Clark Lumber Co. v. Passig,* 184 Kan. 667, 339 P. 2d 280; and cases cited in these authorities.)

While the lumber company would delete the quoted words emphasized in 60-1405, *supra,* and rely on the right to amend a lien statement *in furtherance of justice, except as to the amount claimed,* we think it important that this section of the statute says the lien statement may be amended in the furtherance of justice *as pleadings may be amended in any matter* under the civil code.

The law gives a lien claimant four months in which to file a lien statement, so as to bind the property and create a lien thereon. But a claimant's lien must stand or fall with the lien on file at the expiration of the four months. This period is a *limitation.* Just as a petition cannot be amended to state a cause of action for the first time after the statute of limitations has run on the cause of action, a lien statement cannot be amended to create a valid lien for the first time after the expiration of the four months' limitation period within which to file a valid lien, language in *Cooke v. Luscombe,* 132 Kan. 147, 294 Pac. 849, at page 149, attributed to the holding in *Lumber Co. v. Blanch,* supra, to the contrary notwithstanding. These decisions will be considered later in this opinion. (See, *Logan-Moore Lumber Co. v. Foley,* supra.)

The authority to correct a mistake in the name of a party in 60-759, *supra,* cannot be construed to mean a substitution of parties

after the expiration of the statutory period. If pleadings, though filed in time against one party, cannot be amended after the expiration of the statute of limitations to substitute the name of another party as a defendant, it follows that a lien statement cannot be amended to substitute the names of entirely different owners, after the expiration of the four months' limitation period within which to file the lien statement.

A review of the cases under 60-1405, where the amendment of lien statements has been permitted to change the names of the owners, reveals facts which show identity of ownership. None of them involves a separate and distinct entity of ownership as we have in the instant case.

Thus, in *Lumber Co. v. Collinson,* 97 Kan. 791, 156 Pac. 724, the subcontractor's lien statement named the owner as "S. D. Collinson," the notice of its filing gave the name as "Mrs. S. D. Collinson," and the petition alleged the property belonged to "Amanda E. Collinson" and that she was the same person as the one named in the notice. The court permitted the lien statement to be amended by inserting "Mrs." before the name in the subcontractor's statement. The facts disclosed her husband had been dead for fifteen years and she carried on business in the name of Mrs. S. D. Collinson. The court said whether or not the amendment availed anything, no material error was committed in allowing it to be made.

In *Cooke v. Luscombe,* supra, the petition stated that at the time the lien statement was filed the *record title to the real estate was in Thomas A. Lillis, who had been Bishop* of the Diocese. It was later discovered that the *title was really in John T. Ward,* who had succeeded Bishop Lillis. Notice of the filing of the lien was served upon John T. Ward, record title holder. The amendment was permitted. In this case it was the *Bishop* of the Diocese who held title to the property. The individuals named represented the same identity of ownership, one succeeded the other as Bishop of the Diocese. The petition recited the facts and requested leave to amend by inserting the name of one for the other as owner of the real estate. The court said:

"With these allegations in the petition we think it was proper under the authority of R. S. 60-1405 and *Lumber Company v. Blanch,* 107 Kan. 459, 192 Pac. 742, for the court to permit the amendment prayed for in the petition, and that when so amended the statement created a valid lien." (p. 149.)

On the facts presented the last clause represents an overstatement of the law. A valid lien was not *created* by the amendment. The

amendment clarified the identity of ownership of the property upon which a valid lien had already been created.

In *Lumber Co. v. Blanch*, supra, the lien statement named a husband, W. F. Conner, as the owner of all the property involved. The petition alleged that the husband owned certain of the lots; his wife, Emma S. Conner, other of the lots; and as to the balance, ownership was in both husband and wife. The petition after setting out the errors in the lien statement asked for amendment to correct the mistakes. A question was also presented whether the mechanic's lien covered adjacent lots on opposite sides of an alley. The trial court was reversed and the cause remanded for trial with directions to permit the amendment of the lien statement if the evidence should warrant such amendment. It was stated in the opinion:

". . . In furtherance of justice the lien statement should have been amended so as to correctly set out the name of the owner of the property. . . . Without an amendment of the lien statement, the petition as first filed stated a cause of action against W. F. Conner and Emma S. Conner, *but that cause of action might have been ineffectual because of the errors in the lien statement.* That could not be ascertained until after the introduction of evidence, or after admissions made in the trial statement which would have taken the place of evidence. With an amendment of the statement in the manner requested by the petition as first filed, and by the amendments thereto as afterward filed, a cause of action was stated which, if judgment had been rendered thereon, could have been enforced against all the property." (p. 462.) (Emphasis added.)

There is an identity between husband and wife under the mechanic's lien statutes which does not apply to other persons. Either spouse may create a lien on the property of the other, even without the owner's knowledge. (*Garrett v. Loftus*, 82 Kan. 556, 109 Pac. 179.) The language used in the statute is broad enough to include all contracts made by the spouse of the owner of property for the purchase of material or the erection of improvements thereon, and when a contract is made and the material furnished or improvements made, the party making or furnishing such improvements is entitled to a direct lien against the property. (*Bethell v. Lumber Co.*, 39 Kan. 230, 17 Pac. 813.)

In *Atkinson v. Woodmansee*, 68 Kan. 71, 74 Pac. 640, the owner had been misnamed in the original lien statement and it was held the provisions of the statute, identical with the provisions now under consideration, permit amendment of the lien statement correcting the name of the owner. The decision itself does not give the facts, but resort to the briefs on file in the State Library dis-

closes the lien statement named J. T. Atkinson as the owner and it developed at the trial that Emma R. Atkinson, his wife, was the owner and should have been named in the lien statement.

Amendment of a lien statement was permitted in *Brown v. Walker*, 100 Kan. 542, 164 Pac. 1092, but language used in the opinion infers that amendment to change the names of the owners would be improper. It was said at page 546:

"At the close of the evidence the informalities of the lien statements were corrected by amendment, and the pleadings were amended accordingly. This was entirely proper. No change was made in the statement of the names of the owners, the name of the contractor, or the names of the lien claimants."

Authorities from other jurisdictions are of little value because the statutes of the various states are not uniform. (*Gaudreau v. Smith*, 141 Kan. 123, 40 P. 2d 365.)

In conclusion it is held the lien statement filed by the lumber company on the 5th day of March, 1956, was fatally defective when filed, and no lien was created on the property involved when the lien statement was filed. The lumber company did not have a contract with the Blacks whom it named as the owners, and it knew at the time the lien statement was filed that it supplied the materials under its contract with Lewis. The trial court, therefore, erroneously amended the lien statement by substituting the names of entirely different owners therein, after the expiration of the four months' limitation period within which a valid lien statement could have been filed to bind the property for materials supplied under a contract with the owners.

The judgment of the trial court is reversed.

FATZER, J., dissents.