(129 P.3d 102)

No. 93,410

TRADESMEN INTERNATIONAL, INC., *Appellee/Cross-appellant*, v. WAL-MART REAL ESTATE BUSINESS TRUST; WAL-MART STORES, INC.; MERIT GENERAL CONTRACTORS, INC.; and CENTENNIAL INSURANCE COMPANY, *Appellants/Cross-appellees,* and CONSTRUCTION SERVICES CORP. and DERSTLER LUMBER CO., INC., *Defendants.*

Opinion filed March 3, 2006.

*Leslie A. Bailey* and *Thomas M. Moore*, of Moore & Hennessy, P.C., of Kansas City, Missouri, for appellants/cross-appellees Wal-Mart Real Estate Business Trust; Wal-Mart Stores, Inc.; Merit General Contractors, Inc.; and Centennial Insurance Company.

*Samuel P. Logan* and *James D. Oliver*, of Foulston Siefkin LLP, of Overland Park, for appellee/cross-appellant Tradesmen International, Inc.

Before GREEN, P.J., MCANANY, J., and BRAZIL, S.J.

GREEN, J.: Wal-Mart Real Estate Business Trust and Wal-Mart Stores, Inc. (Wal-Mart); Merit General Contractors, Inc. (Merit); and Centennial Insurance Company (Centennial) (collectively the defendants) appeal from the trial court's grant of the partial summary judgment motion filed by Tradesmen International, Inc. (Tradesmen) and the trial court's denial of the defendants' motion for summary judgment. Tradesmen cross-appeals from the trial

court's decision denying its claim for attorney fees against Centennial under K.S.A. 40-256. The parties' arguments in this case concern two central issues: The validity of a mechanic's lien filed by Tradesmen under K.S.A. 60-1103(a)(1), and Tradesmen's right to recover under a payment bond executed between Merit and Centennial.

First, the defendants argue that the trial court erred in allowing Tradesmen to amend its original mechanic's lien statement. Tradesmen's original lien statement failed to correctly name the contractor as required by K.S.A. 60-1103(a)(1). Tradesmen moved—after the 3-month statutory period for filing a valid mechanic's lien had expired—to amend its lien statement to state the name of the correct contractor. Tradesmen maintains that the amendment of its lien statement was proper under K.S.A. 60-1105(b), which permits amendment upon leave of court and in furtherance of justice as long as the lien amount is not increased.

We determine that a mechanic's lien statement filed by a subcontractor under K.S.A. 60-1103(a)(1) that fails to correctly name the contractor is vitally defective. To hold otherwise would allow Tradesmen to skip one of the essential steps required by K.S.A. 60-1103(a)(1): to correctly state the name of the contractor in its lien statement. Moreover, to hold otherwise would allow Tradesmen to create a mechanic's lien, where none previously existed, after the expiration of the statutory period for obtaining such a lien. Because the trial court may not exercise its authority to allow the amendment of a mechanic's lien statement to evade or defeat the operation of K.S.A. 60-1103(a)(1), we determine that the trial court's decision allowing Tradesmen to amend its mechanic's lien statement to correctly name the contractor was in error. Because Tradesmen does not have a valid mechanic's lien, we reverse the trial court's grant of summary judgment in favor of Tradesmen on Count I of its petition.

Next, the defendants argue that Tradesmen was not a proper bond claimant under Centennial's payment bond. We determine that because Tradesmen provided skilled laborers that were used in the prosecution of work under the general contract between Wal-Mart and Merit, Tradesmen was a proper bond claimant un-

der Centennial's payment bond. As a result, we affirm the trial court's grant of summary judgment in favor of Tradesmen on Count II of its petition.

Finally, in its cross-appeal, Tradesmen argues that the trial court erred in finding that there was "just cause or excuse" for Centennial refusing to pay its bond claim and in denying recovery for its attorney fees under K.S.A. 40-256. Because we are unable to determine that no reasonable person would take the view of the trial court, we find no abuse of discretion and affirm the trial court's decision on the attorney fees issue. Accordingly, in this case we affirm in part and reverse in part.

Merit contracted with Wal-Mart for the construction of a Wal-Mart supercenter in Overland Park, Kansas (Wal-Mart project). As the general contractor on the Wal-Mart project, Merit posted a payment bond naming it as the principal and Centennial as the surety. Merit subcontracted with Construction Services Corp. (CSC) to complete the concrete work called for in the general contract.

A "Client Services Agreement" existed between CSC and Tradesmen in which Tradesmen agreed to provide skilled laborers to CSC. In turn, CSC agreed to pay Tradesmen's billed hourly rate for the skilled laborers that were provided. Although Tradesmen and CSC never entered into an agreement specifically concerning the Wal-Mart project, CSC used laborers provided by Tradesmen in the Wal-Mart project.

Merit eventually terminated CSC from its subcontract. As of June 27, 2003, the amount of $168,031.04 remained due and owing from CSC to Tradesmen for the skilled laborers supplied to the Wal-Mart project. Tradesmen made demand upon Merit and the payment bond for $168,031.04. Merit and Centennial refused to pay Tradesmen's claim.

In August 2003, Tradesmen filed a subcontractor's mechanic's lien statement against property owned by Wal-Mart. In its lien statement, Tradesmen claimed that under its contract with CSC, it had furnished labor for the construction of the Wal-Mart project. The amount of Tradesmen's claim was $168,031.04 plus interest. Tradesmen alleged that it had last furnished labor and services

under the client services agreement on June 27, 2003. The lien statement failed to correctly name the contractor as Merit General Contractors, Inc., and instead named Merit Construction Co., Inc., as the contractor.

Tradesmen filed suit in August 2003. In its first-amended petition, Tradesmen sought to foreclose its mechanic's lien (Count I) and to recover $168,031.04 plus interest and costs from Centennial on its payment bond, as well as attorney fees from Centennial under K.S.A. 40-256 (Count II). Tradesmen raised other claims in its first-amended petition, including a quantum meruit claim against Merit (Count III) and a contract claim against CSC (Count IV). Nevertheless, the latter two claims are not the subject of this appeal.

In January 2004, Tradesmen moved to amend its mechanic's lien statement to correctly name Merit General Contractors, Inc., as the proper contractor. The defendants opposed the amendment, arguing that Tradesmen could not be allowed to amend the lien statement to correctly name the contractor after the statutory period for filing a valid lien had expired. The trial court allowed Tradesmen to amend its lien statement to name the proper contractor as Merit General Contractors, Inc. Tradesmen filed its amended subcontractor's lien statement in June 2004.

Both the defendants and Tradesmen moved for summary judgment on Counts I and II of Tradesmen's first-amended petition. The trial court denied the defendants' motion for summary judgment and granted Tradesmen's motion for summary judgment. The trial court, however, denied Tradesmen's request for attorney fees under K.S.A. 40-256 against Centennial. The trial court entered a final judgment on Counts I and II of Tradesmen's petition under K.S.A. 60-254(b).

*Summary Judgment Standard of Review*

In reviewing the trial court's decision on the parties' summary judgment motions, we use the following standard of review:

" ' "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusion drawn from the evidence, summary judgment must be denied." [Citations omitted.]' " *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 788, 107 P.3d 1219 (2005).

### Validity of Mechanic's Lien

First, the defendants contend that the trial court erred in allowing Tradesmen to correct its vitally defective mechanic's lien statement after the time for filing the lien statement had expired. K.S.A. 60-1105(b) authorizes amendment of a lien statement by leave of the court and in the furtherance of justice as long as the lien amount is not increased. See *Scott v. Strickland*, 10 Kan. App. 2d 14, 22, 691 P.2d 45 (1984). Nevertheless, K.S.A. 60-1105(b) does not permit the trial court to allow amendment of a vitally defective mechanic's lien statement after the statutory filing period has expired. See *D.J. Fair Lumber Co. v. Karlin*, 199 Kan. 366, 372, 430 P.2d 222 (1967).

Here, it is undisputed that Tradesmen amended its lien statement to change the name of the contractor after the 3-month statutory period for filing its lien statement had expired. The question then becomes: Was the initial lien statement filed by Tradesmen within the 3-month statutory filing period vitally defective by failing to name the proper contractor?

In order to determine whether the mechanic's lien statement filed by Tradesmen was vitally defective, we must look at the statutory requirements that govern mechanics' lien statements. This is because mechanics' liens are statutory and can only be created in the manner set forth in the statutes. Parties claiming a mechanic's lien have the burden of bringing themselves clearly within the statutory provisions. *Creme de la Creme (Kansas), Inc. v. R & R Int'l, Inc.*, 32 Kan. App. 2d 490, 493, 85 P.3d 205, *rev. denied* 278 Kan. 844 (2004). Although the mechanics' lien statutory provisions are liberally construed once a lien attaches, the requirements for a lien

to come into existence must be strictly met. *J. Walters Constr. Co. v. Greystone South Partnership*, 15 Kan. App. 2d 689, 691, 817 P.2d 201 (1991).

Both parties agree that Tradesmen filed its mechanic's lien under K.S.A. 60-1103, which states in relevant part:

"(a) *Procedure.* Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, subcontractor or owner contractor may obtain a lien for the amount due in the same manner and to the same extent as the original contractor except that:

(1) *The lien statement must state the name of the contractor and be filed within three months after the date supplies, material or equipment was last furnished or labor performed by the claimant.*" (Emphasis added.)

K.S.A. 60-1103(a)(1) clearly requires the contractor to be named in the mechanic's lien statement. Here, Tradesmen's original lien statement incorrectly named Merit Construction Co., Inc., as the contractor. Tradesmen moved after the statutory filing period to amend its mechanic's lien statement to correctly name Merit General Contractors, Inc., as the contractor. Merit Construction Co., Inc., and Merit General Contractors, Inc., are separate corporate entities.

Tradesmen maintains that the case closest in point to the instant situation is *Strickland*, 10 Kan. App. 2d 14, Syl. ¶ 5, where this court affirmed the trial court's decision allowing amendment under K.S.A. 60-1105(b) of a lien statement to add a joint owner. In that case, Jerry Wilson d/b/a Woods-Ringstaff Lumber Company (Woods-Ringstaff) filed a mechanic's lien for an unpaid lumber bill. Although the property on which the mechanic's lien was filed was owned by Cecilia and Jimmie Scott in joint tenancy, the original lien statement only named Jimmie Scott as the owner. After the statutory filing period had expired, Woods-Ringstaff was allowed to amend its mechanic's lien to add Cecilia Scott as an owner.

Woods-Ringstaff later obtained a judgment to foreclose its mechanic's lien on the subject property. On appeal, the Scotts argued that the failure of the original lien statement to name Cecilia Scott as an owner and thus to attach to her interest in the property could not be cured by amending the statement after the statutory filing

period had expired. In rejecting the Scotts' argument, this court relied on *Logan-Moore Lumber Co. v. Black*, 185 Kan. 644, 651, 347 P.2d 438 (1958), where our Supreme Court stated that there is an identity of ownership among spouses so that an amendment to a valid lien against one spouse to add the name of the other spouse is proper. This court concluded that the trial court properly allowed amendment of the mechanic's lien statement to name Cecilia as an owner. *Strickland*, 10 Kan. App. 2d at 22.

The Scotts also argued that the mechanic's lien statement was deficient because it failed to specifically identify Forrest Strickland as the contractor. Nevertheless, the lien statement did name Strickland as receiving the materials provided on behalf of the Scotts. This court stated that the job and authority upon which Woods-Ringstaff provided the building material were identified by the inclusion of Strickland's name in the lien statement. Thus, this court concluded that the lien statement adequately identified Strickland as the contractor. 10 Kan. App. 2d at 23.

It is puzzling why Tradesmen relies on *Strickland* to support its argument here. Unlike the facts of *Strickland*, the original mechanic's lien statement filed by Tradesmen never identified the correct contractor. In fact, nowhere within the original mechanic's lien statement was the name of Merit General Contractors, Inc.

Further, the instant case does not fall within the "identity of ownership" situation that existed in *Strickland*. In *Strickland*, Woods-Ringstaff was merely attempting to add a joint owner to an already valid mechanic's lien. The mechanic's lien had already attached to the husband's interest in the property because he had been named in the original lien statement. The *Strickland* court noted that "[a] mechanic's lien may attach to any interest in the land held by the person for whom the materials were provided. In other words, a person holding any legal or equitable interest in realty may be an owner for the purposes of the mechanics' lien statutes. [Citation omitted.]" 10 Kan. App. 2d at 22. Here, there was never a correct contractor named in the original mechanic's lien statement. Moreover, Tradesmen persuaded the trial court to allow it to name a different corporation as the contractor. Similarly,

the substitution of separate and distinct entities was rejected in the *Black* case. See 185 Kan. 644, Syl. ¶ ¶ 1 and 3.

In *Black*, 185 Kan. 644, our Supreme Court held that a mechanic's lien statement may not be amended to change the names of the owners of the property after expiration of the statutory filing period. There, Logan-Moore Lumber Company (Logan-Moore) filed a mechanic's lien statement that listed James and Sara Black as owners of the property. After the statutory period in which to file the lien statement had expired, Logan-Moore requested leave to amend its lien statement to show that Leland Lewis owned the property at the time it contracted to supply materials and at the time it supplied all but one of the items described in the lien statement. The trial court amended the lien statement to substitute the names of Lewis and his wife for the names of the Blacks.

In reversing the trial court's decision, our Supreme Court distinguished its earlier decisions where the amendment of lien statements had been allowed to change the names of the owners as follows: "A review of the cases under 60-1405, where the amendment of lien statements has been permitted to change the names of the owners, reveals facts which show identity of ownership. None of them involves a separate and distinct entity of ownership as we have in the instant case." 185 Kan. at 652. Our Supreme Court cited its earlier decision in *Cooke v. Luscombe*, 132 Kan. 147, 149, 294 Pac. 849 (1931), where it held that amendment of the lien statement was proper where the individuals named represented the same identity of ownership. Our Supreme Court stated that the amendment had not created a valid lien but rather had "clarified the identity of ownership of the property upon which a valid lien had already been created." 185 Kan. at 652-53. Nevertheless, the lien statement of Logan-Moore was fatally defective when filed and thus no lien had been created on the property at the time of filing. Our Supreme Court determined that the trial court had erroneously amended the lien statement by substituting the names of entirely different owners after the expiration of the statutory filing period. 185 Kan. at 654.

Nevertheless, the *Black* holding was decided under G.S. 1949, 60-1405, which predated K.S.A. 60-1105(b). In *D.J. Fair Lumber*

*Co.*, 199 Kan. 366, our Supreme Court considered what effect K.S.A. 60-1105(b) had on previous holdings under G.S. 1949, 60-1405. K.S.A. 60-1105(b) deleted language from G.S. 1949, 60-1405 permitting amendments only " 'as pleadings may be in any matter.' " 199 Kan. at 371. Our Supreme Court set forth District Judge Spencer A. Gard's comments in Gard's Kansas Code of Civil Procedure Annotated § 60-1105, p. 661 (1st ed. 1963), on K.S.A. 60-1105(b), as follows:

> " 'This provision is the same as the last part of GS 1949, 60-1405, relating to amendment of the lien statement. The attitude toward amendment in Kansas has been liberal, both as expressed by the legislative intent and by the court decisions. This subsection does not make it less so . . . [.]'
>
> "However, Judge Gard continues:
>
> 'In order to justify an amendment the lien statement must have been sufficient when filed to perpetuate the lien. *S. J. Safford & Son Lumber Co. v. Kerley*, 184 Kan. 59, 334 P.2d 334 [1959]. Thus any amendment may be permitted to perfect a lien statement not vitally defective . . . [.]' " *D.J. Fair Lumber Co.*, 199 Kan. at 371.

Our Supreme Court determined that "the language used in K.S.A. 60-1105(b) is not sufficiently different from that used in the prior statute (G.S. 1949, 60-1405) to permit amendment of a vitally defective lien statement after the statutory period in which to file such lien has expired." 199 Kan. at 372.

Here, Tradesmen moved to amend the lien statement to substitute the name of an entirely different company as the contractor. Because the original lien statement contained the name of the wrong contractor, it failed to create a valid lien against the property. "There is no privity of contract between a subcontractor and a property owner, and the former can obtain a lien only by complying with the statutory provisions. [Citations omitted.]" *Sutherland Lumber Co. v. Due*, 212 Kan. 658, 660, 512 P.2d 525 (1973). Tradesmen did not establish the connection between a subcontractor and the owner of property by naming the contractor as required by K.S.A. 60-1103(a)(1).

Unlike the facts of *Strickland*, there was no valid mechanic's lien in effect when Tradesmen sought to amend its mechanic's lien after the expiration of the statutory filing period. Tradesmen was not

seeking to merely add a contractor to an already valid lien statement. In fact, there is no evidence in the record that Merit Construction Co., Inc., was also a contractor on the Wal-Mart project and thus its name on the original lien statement created a valid lien. Instead, the record indicates that Tradesmen had listed on the original lien statement an entity that was entirely different from the proper contractor, Merit General Contractors, Inc. Without the proper contractor being named in the original lien statement, no valid lien was created within the statutory filing period.

In *D.J. Fair Lumber Co.*, 199 Kan. 366, Syl. ¶ 5, our Supreme Court determined that D.J. Fair Lumber Co.'s lien statement, lacking verification as required by K.S.A. 60-1102, created no valid lien and could not be amended after the statutory filing period had expired. Determining that the trial court's power to permit amendment of a lien statement is limited where the proposed amendment would evade or defeat the operation of mechanics' lien statutes, our Supreme Court in *D.J. Fair Lumber Co.* stated:

"The exercise of the power of amendment conferred by 60-1105(b) is limited by the possibility of injustice to either the defendant or to third persons, and the burden is upon the claimant to show the proposed amendment would not work an injustice. The power is further limited where the proposed amendment would evade or defeat the operation of statutes-here, 60-1102 and 60-1103-since no court has power to nullify statutes valid on their face. (*Atkinson v. Woodmansee*, 68 Kan. 71, 74 Pac. 640.) In short, the plaintiff's proposed amendment would not have been 'in the furtherance of justice' since the amendment sought would have had the effect of creating a lien where none previously existed, and this, as we have seen, would evade or defeat the operation of 60-1102 and 60-1103." 199 Kan. at 372.

Thus, if the lien statement is vitally defective when filed, it cannot be amended after the statutory period in which to file the lien has expired.

Nevertheless, Tradesmen contends that there is no evidence that the defendants were prejudiced in any way by the name of the wrong contractor in the lien statement or that Merit did not know which entity was involved. With this argument, Tradesmen seems to focus on a matter extraneous to the question at hand. Although the defendants may not have been prejudiced by Tradesmen naming the wrong contractor, this is not the issue. The question at hand

is whether the trial court properly granted the amendment to Tradesmen's mechanic's lien statement.

In our extensive research on this issue, however, we have not discovered a case which has considered the issue of whether defendants have been prejudiced by deficiencies in a lien statement. Instead, we find that the cases consistently hold to the rules that parties can only create a mechanic's lien by strictly following the requirements contained in the statutory provisions and that those parties have the burden of bringing themselves within the statutory provisions. See *Sutherland Lumber Co.*, 212 Kan. 658, Syl. ¶ 1; *Jankord v. Lin*, 32 Kan. App. 2d 1255, Syl. ¶ 2, 96 P.3d 692 (2004); *Creme de la Creme*, 32 Kan. App. 2d 490, Syl. ¶ 2. These rules are best expressed in *D.J. Fair Lumber Co.*, where our Supreme Court quoted the following language from *Ekstrom United Supply Co. v. Ash Grove Lime & Portland Cement Co.*, 194 Kan. 634, 635-36, 400 P.2d 707 (1965):

> " 'It is a settled rule in this state that equitable considerations do not ordinarily give rise to a mechanic's lien. Being created by statute, a mechanic's lien can only arise under the circumstances and in the manner prescribed by the statute. A lien claimant must secure a lien under the statute or not at all. (*Don Conroy Contractor, Inc v. Jensen*, 192 Kan. 300, 304, 387 P.2d 187.) The validity of a lien created solely by statute depends upon the terms of the statute, and parties may not by estoppel enact or enlarge a statute. (*Clark Lumber Co. v. Passig*, 184 Kan. 667, 673, 339 P.2d 280.) There is no privity of contract between the subcontractor and the owner, and the [subcontractor] can only obtain a lien by compliance with the statutory provisions. It is not enough that [the subcontractor] has furnished the material and filed a lien.' " *D.J. Fair Lumber Co.*, 199 Kan. at 369.

Thus, we look only to whether a lien claimant followed the statutory requirements to create a valid lien on the property. Here, by not following an essential requirement of K.S.A. 60-1103 to name the proper contractor, Tradesmen failed to bring itself within the statutory provisions to file a valid mechanic's lien.

Our Supreme Court has held that a mechanic's lien statement filed by a subcontractor which fails to state the name of the contractor is fatally defective. *Badger Lumber & Coal Co. v. Schmidt*, 122 Kan. 48, Syl. ¶ 1, 251 Pac. 196 (1926). *D.J. Fair Lumber Co.* concluded that K.S.A. 60-1105(b) does not permit "amendment of a vitally defective lien statement after the statutory period in which

to file such lien has expired." 199 Kan. at 372. Thus, the lien statement was vitally defective when filed and could not be amended to allow Tradesmen to correctly name the contractor. As a result, the trial court had no authority to allow the amendment of the lien statement.

Because Tradesmen never had a valid mechanic's lien on the property, the trial court erred in granting Tradesmen's motion for summary judgment and in denying the defendants' motion for summary judgment relating to Count I of Tradesmen's petition.

*Recovery Under Payment Bond*

Next, the defendants argue that Tradesmen was not a proper bond claimant under the payment bond issued by Centennial on the Wal-Mart project. This issue requires interpretation of language found in the payment bond executed by Merit and Centennial. "The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 (2001).

The payment bond states in relevant part:

"The said Principal [Merit] and the said Surety [Centennial] agree that this Bond shall inure to the benefit of all persons or entities as supplying labor, material, services, utilities and equipment in the prosecution of the work provided for in said Contract, as well as to the Obligee [Wal-Mart Stores, Inc.], and that any of such persons or entities may maintain independent actions upon this Bond in the name of the persons or entities bringing such action."

The trial court determined that Tradesmen could recover under this payment bond, stating:

"Based on this Court's conclusion that Tradesmen provided labor, and that Tradesmen is a proper lien claimant, this Court further finds that Tradesmen's bond claim is proper and valid. Moreover, even if it did not supply labor, Tradesmen clearly supplied 'services . . . in the prosecution of the work' on the Supercenter project — a category not provided in the Kansas statute — and is entitled to the benefit of the bond for this reason as well. Defendants have failed to establish a genuine issue of material fact as to Count II and Plaintiff is entitled to judgment as a matter of law."

In arguing that the trial court's determination was erroneous, the defendants cite *Goodyear Tire & Rubber Company v. Jones*, 317 F. Supp. 1285 (D. Kan. 1968), *aff'd* 433 F.2d 629 (10th Cir. 1970), where the court held that a contractor's promise to pay additional compensation to two foremen if they were still working for the contractor at the completion of the project did not come within the term "labor" as used in a labor and materials payment bond. There, Mrs. E.A. Jones (Fern Jones) d/b/a Jones Electric Machinery Company (Jones) entered into a construction contract with Goodyear Tire & Rubber Co. (Goodyear) to perform electric work and supply materials to the Goodyear plant near Topeka. Based on a requirement under the contract, Jones posted a performance bond and a labor and material payment bond. The labor and material payment bond was conditioned to pay all claimants " 'for all labor or material used or reasonably required for use in the performance of the contract.' " 317 F. Supp. at 1292. The payment bond further defined a claimant as " 'one having a direct contract with the principal or with the subcontractor of the principal for labor, material, or both, used or reasonably required for use in the performance of the contract.' " 317 F. Supp. at 1292.

On the day that Goodyear accepted Jones' bid for the project, Jones agreed to pay two foremen additional compensation of $5,500 each upon the completion of the Goodyear contract if these two foremen continued to work for Jones until the end of the project. The written agreement to pay this additional compensation indicated that the two foremen were having difficulty with their union and were under enormous pressure to leave Jones. Before the federal district court, the two foremen and Jones argued that the promised additional wages were covered under the labor and material bond. In addressing this argument, the federal district court looked to the contract between Goodyear and Jones that was made a part of the bond by reference. Although the contract outlined the labor and materials costs of the project specifications, there was no disclosure of the written agreement between Jones and the two foremen concerning the additional money promised and the contract made no provision for such payment. The federal district court determined that the additional money promised to

the two foremen was not for "labor" within the contemplation of any of the parties as that term was used in the labor and material payment bond. 317 F. Supp. at 1293.

The *Goodyear* decision is factually distinguishable from the instant case in two important ways. First, the claimed amount in *Goodyear* was essentially a retention bonus. Jones promised the two foremen money so that they would resist pressure from their union and not end their employment with Jones during the Goodyear construction project. As pointed out by Tradesmen, the claimed amount was not for labor performed on the construction project at the foremen's normal compensation rates. Here, Tradesmen is seeking compensation for skilled labor that they provided to CSC and was used in the Wal-Mart construction project.

Second, the language contained in the bond in *Goodyear* was much more restrictive than the language used in the payment bond here. In *Goodyear*, the payment bond extended to all claimants " 'for all labor or material used or reasonably required for use in the performance of the contract.' " 317 F. Supp. at 1292. The payment bond further limited its coverage by defining the term "claimant." Here, the coverage of the payment bond is not restricted to a defined "claimant." Rather, the broad language of the payment bond extends to "all persons or entities." Moreover, unlike the language found in the payment bond in *Goodyear*, coverage is not limited to those providing labor or material. Instead, "all persons or entities as supplying *labor, material, services, utilities and equipment* in the prosecution of the work provided for" in the general contract are included within the language of the bond. (Emphasis added.)

Tradesmen is seeking payment under the bond for skilled laborers it provided to CSC which in turn used these laborers in the Wal-Mart project. The general manager of Tradesmen, Paul Neuberger, stated in his affidavit that "Tradesmen, at CSC's request, sent Tradesmen's skilled construction work[er]s to the Wal-Mart jobsite . . . to assist CSC in the performance of CSC's subcontract obligations to Merit." Further, as Tradesmen points out, Merit's president Stanley Bachman admitted in his deposition that

Tradesmen provided laborers to CSC and that these laborers worked on the Wal-Mart project:

"Q. [Tradesmen's counsel]: Would you agree that Tradesmen was an entity that supplied labor in the prosecution of the work provided for in Merit's contract with Wal-Mart?

. . . .

"A. [Bachman]: It is my understanding that Tradesmen did—and CSC had some type of an arrangement where the people were provided to CSC by Tradesmen that worked on the project, yes.
"Q.: That those people worked on the project; is that correct?
"A.: It's my understanding, yes."

Thus, there is no dispute that Tradesmen supplied laborers who worked on the Wal-Mart project.

Nevertheless, the defendants argue that Tradesmen did not supply any labor or services in the prosecution of the Wal-Mart project but instead only provided services to CSC of an administrative nature. The defendants maintain that Tradesmen was a professional employer organization (PEO) type of entity which courts from other jurisdictions have held are not proper bond claimants. To support its argument on this issue, the defendants cite *Tri-State Employment v. Mountbatten Surety*, 99 N.Y.2d 476, 758 N.Y.S.2d 595, 788 N.E.2d 1023 (2003), and *Better Financial Solutions v. Transtech*, 112 Wash. App. 697, 51 P.3d 108 (2002), *rev. denied* 149 Wash. 2d 1010 (2003).

Neither *Tri-State* nor *Better Financial* provide support for the defendants' argument. The PEO's in both *Better Financial* and *Tri-State* merely provided payroll services to the contractor or subcontractor on the construction project. In *Tri-State*, the PEO entered into an agreement with the contractor to provide employee leasing services which consisted of hiring the contractor's employees, leasing the employees back to the contractor, and paying all of the wages, taxes, and other payroll expenses of the contractor's former employees. In *Better Financial*, the PEO provided similar services to a subcontractor on a construction project. The subcontractor transferred its employees to the PEO to allow the PEO to take over the payroll administration for these individuals. The PEO's in

*Better Financial* and *Tri-State* did not provide actual laborers who worked on the construction project as Tradesmen did in this case.

The evidence in this case shows that Tradesmen is not the type of PEO found in *Better Financial* and *Tri-State*. Tradesmen supplies its own employees to supplement the labor needed by its clients. These employees have been interviewed, screened, and hired by Tradesmen according to Tradesmen's procedures and employment criteria. In addition, these employees are also trained by Tradesmen. According to Neuberger's affidavit, each of the employees for whom Tradesmen billed CSC in connection with the Wal-Mart project was interviewed, screened, hired, and trained by Tradesmen. Tradesmen was not merely supplying administrative services.

We agree with the trial court that Tradesmen supplied labor and that its bond claim was proper and valid. The plain language of the payment bond extends coverage to "all persons or entities as supplying labor, material, services, utilities and equipment in the prosecution of the work provided for" in the general contract between Merit and Wal-Mart. "Where contract terms are plain and unambiguous, the intention of the parties and the meaning of the contract are determined from the contract itself. [Citation omitted.]" *Zukel v. Great West Managers, LLC*, 31 Kan. App. 2d 1098, 1101, 78 P.3d 480 (2003), *rev. denied* 277 Kan. 928 (2004). Because Tradesmen was an entity that supplied skilled laborers who were used in the prosecution of the work provided for in the general contract between Merit and Wal-Mart, we determine that Tradesmen should be permitted to recover under the payment bond.

Moreover, the trial court also concluded that even if Tradesmen did not supply labor, it clearly supplied "services . . . in the prosecution of the work" on the Wal-Mart project and thus was entitled to payment under the bond. The defendants, however, contend: "Tradesmen merely provided services to CSC of an administrative nature, it did not provide any labor or services in the prosecution of the contract work. Tradesmen's administrative services are of the type and nature of office work, not physical labor." With this argument, the defendants seem to suggest that the term "services" in the bond means that a person or entity has to provide some

physical labor. Even if we were to agree with the defendants' argument, which we do not, we have already determined that Tradesmen supplied physical labor that was used in the Wal-Mart project.

Furthermore, the payment bond does not restrict the term "services" to physical labor. Because the broad terms used in the payment bond are undefined, we give this clear and unambiguous language its ordinary meaning. See *American Media, Inc. v. Home Indemnity Co.*, 232 Kan. 737, 740, 658 P.2d 1015 (1983) (if language in insurance policy is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense). Here, the defendants' argument concedes that Tradesmen provided services to CSC. Moreover, we determine that the hiring, training, and paying of employees supplied to the Wal-Mart project constituted "services . . . in the prosecution of the work provided for" in the general contract between Merit and Wal-Mart. Therefore, the defendants' arguments on this issue fail.

Because Tradesmen was a proper claimant under Centennial's payment bond, the trial court properly granted Tradesmen's motion for summary judgment and denied the defendants' motion for summary judgment relating to Count II of Tradesmen's petition.

*Attorney Fees*

Finally, in its cross-appeal, Tradesmen argues that the trial court erred in finding that there was "just cause or excuse" for Centennial refusing to pay Tradesmen's payment bond claim and in denying it attorney fees under K.S.A. 40-256.

K.S.A. 40-256 outlines the circumstances under which a claimant is allowed to recover attorney fees against an insurance company that has refused without just cause or excuse to pay for a loss:

"That in all actions hereafter commenced, in which judgment is rendered against any insurance company as defined in K.S.A. 40-201, and including in addition thereto any fraternal benefit society and any reciprocal or interinsurance exchange on any policy or certificate of any type or kind of insurance, if it appear from the evidence that such company, society or exchange has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee for services in such action, including proceeding upon appeal, to be recovered and collected as a part of the costs: *Provided, however,* That when a tender is made

by such insurance company, society or exchange before the commencement of the action in which judgment is rendered and the amount recovered is not in excess of such tender no such costs shall be allowed."

Under K.S.A. 40-201, the term "insurance company" includes "corporations, companies, associations, societies, persons or partnerships writing contracts of insurance, indemnity or suretyship upon any type of risk or loss."

Whether an insurer has refused to pay without just cause or excuse is a factual question for the trial court. In refusing to pay a claim, an insurer has the duty to investigate the facts surrounding the claim. If there is a bona fide and reasonable factual ground for contesting the claim, there is no failure to pay without just cause or excuse. An appellate court reviews the trial court's determination of whether there was just cause to refuse payment and, therefore, justification for denial of attorney fees for an abuse of discretion. *Evans v. Provident Life & Accident Ins. Co.*, 249 Kan. 248, 261-62, 815 P.2d 550 (1991). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citation omitted.]" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002).

Here, the trial court stated that the issues presented raised questions of first impression. Indeed, the parties did not point us to any Kansas cases that addressed the obligation of a surety to a subcontractor of a subcontractor. Moreover, the parties failed to cite any Kansas cases involving a PEO. Based upon our standard of review, we are unable to say that no reasonable person would take the view of the trial court. In declining to award attorney fees to Tradesmen, the trial court did not abuse its discretion because there existed a valid controversy in the case.

Affirmed in part and reversed in part.