(208 P.3d 755)
No. 99,936

NATIONAL RESTORATION COMPANY, *Plaintiff*, v. MERIT GENERAL CONTRACTORS, INC., *Defendant/Appellee*, and WICHITA SHEET METAL SUPPLY, INC., d/b/a ALL AMERICAN SUPPLY CO., *Defendant/Appellant*. WICHITA SHEET METAL SUPPLY, INC., d/b/a ALL AMERICAN SUPPLY CO., *Third-party Plaintiff/Appellant*, v. GOSS SERVICE COMPANY, INC., and JAY E. GOSS, *Third-party Defendants*.

Opinion filed May 22, 2009.

*Calvin L. Wiebe*, of Wiebe Law Office, P.A., of Wichita, for appellant.

*Thomas M. Moore* and *Jody R. Gondring*, of Moore & Hennessy, P.C., of Kansas City, Missouri, for appellee.

Before MCANANY, P.J., GREEN and BUSER, JJ.

GREEN, J.: This case concerns the validity of a mechanic's lien filed by Wichita Sheet Metal Supply, Inc. (WSM) under K.S.A. 60-1103(a)(1). The mechanic's lien statement filed by WSM named Merit Construction Company, Inc., as the general contractor on a construction project when Merit General Contractors, Inc., a separate entity, was the actual general contractor. The trial court determined that the mechanic's lien was fatally defective and unenforceable due to WSM naming the wrong general contractor. As a result, the trial court granted summary judgment in favor of Merit General Contractors, Inc.

On appeal, WSM raises a variety of arguments as to why the trial court erred in granting summary judgment to Merit General Contractors, Inc. Nevertheless, we agree with the trial court's decision. It is uncontroverted in this case that WSM failed to name the proper general contractor in its mechanic's lien statement, as required by K.S.A. 60-1103(a)(1). It is further uncontroverted that WSM had actual knowledge that Merit General Contractors, Inc., was the general contractor on the construction project several months before WSM filed its mechanic's lien. With such knowledge, WSM, by acting in a reasonably diligent manner, could have verified that Merit General Contractors, Inc., was indeed the general contractor and could have properly named it on the mechanic's lien statement. Based on the uncontroverted facts, WSM's arguments that it should be excused from the contractor-naming requirement of K.S.A. 60-1103(a)(1) are meritless.

Finally, in its reply brief, WSM raises a new issue concerning its right to recover on a payment bond executed by Inland Insurance Company (Inland) and Merit General Contractors, Inc. Nevertheless, because WSM never raised the bond issue in its initial appellate brief filed with this court, we are unable to consider WSM's argument. Accordingly, we affirm the trial court's decision to grant summary judgment in favor of Merit General Contractors, Inc.

Merit General Contractors, Inc., was the general contractor on a commercial construction project known as Dillon's Store's Supermarket #79, located at 14301 Metcalf Avenue in Overland Park (hereinafter referred to as the Dillon's project). Goss Service Company, Inc. (Goss), was a subcontractor supplier to Merit General

Contractors, Inc., on the Dillon's project. From April 2003 through August 7, 2003, WSM provided materials to Goss for the Dillon's project.

On June 30, 2003, Shelley Hart, WSM's credit manager, signed a lien waiver form on behalf of WSM. The lien waiver form stated that WSM had been paid by Goss "for all materials in the amount of $2000 and/or labor by us to your firm up to and including 6-30-03 for use on the Dillons #79 and do hereby release all lien rights." The lien waiver form was directed to and clearly named "Merit General Contractors, Inc." As of June 30, 2003, Goss owed WSM $77,792.59, plus interest and allowable attorney fees, in unpaid invoices for the Dillon's project.

In the summer and early fall of 2003, Hart contacted Goss because it was past due on its payments to WSM for materials provided for the Dillon's project. In her affidavit, Hart stated that she "understood Pat Larson, one of the principals of Goss, to refer to the general contractor for the Project as 'Merit Construction' as did Mike Legero, the branch manager at All American Supply."

After receiving a lien waiver and final release, Hart wrote to Stan Bachman, the president of Merit, on September 24, 2003. The parties have not pointed to the lien waiver and final release in the record. In her letter, Hart notified Bachman that WSM was unable to sign the lien waiver and final release as there was a substantial amount due for materials on the Dillon's project. Moreover, Hart stated that WSM would exercise its right to file a mechanic's lien unless a substantial reduction of the debt had been made before October 24, 2003.

According to Bachman, Merit General Contractors, Inc., relied upon the lien waiver signed by WSM on June 30, 2003, when releasing payment to Goss. Moreover, Bachman stated in his affidavit that Merit General Contractors, Inc., had no knowledge that WSM was owed any money by Goss other than the $2,000 that WSM had acknowledged receiving in its June 30, 2003, lien waiver. Bachman further stated that had Merit General Contractors, Inc., known that WSM was owed money by Goss, it would not have released payment to Goss.

In responding to Hart's September 24, 2003, letter, Bachman wrote that WSM had signed the waiver form in which it had waived its lien rights for all materials shipped on or before June 30, 2003; that many of the invoices after June 30, 2003, were for hand tools or equipment purchases that were not "lienable" as they were not incorporated into the Dillon's project; and that WSM's total included materials that were not incorporated into the work on the Dillon's project. Bachman concluded his letter to Hart by stating that if WMS chose to file a lien, Merit General Contractors, Inc., would consider the lien "fraudulent and slanderous."

Bachman's letter was written on stationery that had "MERIT" in large letters at the top of the page. The stationery also had the headings "GENERAL CONTRACTORS," "DESIGN/BUILD," and "CONSTRUCTION MANAGERS" across the top of the page underneath the name "MERIT."

In December 2003, WSM filed a mechanic's lien on the Dillon's property for $97,029.90, plus interest, costs, and fees, which was for materials furnished through August 7, 2003, under WSM's contract with Goss. Hart executed the mechanic's lien statement on behalf of WSM. In the mechanic's lien statement, Merit Construction Company, Inc., was named as the general contractor on the Dillon's project. When questioned about this lien during his deposition, Legero testified that he vaguely remembered Hart calling him and asking for the information, such as address, general contractor, and building permit number, that she needed for the lien. When questioned whether he filed a lot of liens, Legero testified that he filed more liens "than I would like to" and that it was "standard procedure in our business." WSM has five branches of business with offices in surrounding states.

On December 22, 2003, a letter from WSM with an attached copy of the mechanic's lien was delivered to Merit Construction Company, Inc., c/o Stan Bachman, President, by certified mail restricted delivery. Bachman signed for the letter.

In February 2004, National Restoration Company (National) commenced the instant case by filing a petition to foreclose its mechanic's lien on the Dillon's property. WSM was named as a defendant in the action by virtue of WSM's mechanic's lien on the

Dillon's property. In March 2004, WSM filed its answer, counter-claim, and cross-claims relating to its mechanic's lien. WSM requested that the trial court determine its rights in and to the Dillon's property, that its mechanic's lien be foreclosed, and that the trial court order the sale of the Dillon's property to satisfy the lien. In addition, WSM asked for a judgment against Goss for $98,268.64, plus interest, costs, and fees. National and Merit General Contractors, Inc., eventually settled their issues, and National was dismissed from the case.

In June 2004, Merit General Contractors, Inc., as principal, and Inland, as surety, posted mechanic's lien bond number 406120-1 in the event that WSM's mechanic's lien was determined to be valid and enforceable. WSM then filed a claim on the bond.

Merit General Contractors, Inc., later moved for summary judgment against WSM. Merit General Contractors, Inc., argued that WSM's mechanic's lien statement improperly named Merit Construction Company, Inc., instead of Merit General Contractors, Inc., as the contractor on the Dillon's project. Merit General Contractors, Inc., further argued that WSM's mechanic's lien must fail because it included inappropriate and nonlienable items.

In the evidence provided to support its motion for summary judgment, Merit General Contractors, Inc., provided an affidavit from Bachman stating that Merit General Contractors, Inc., was the general contractor on the Dillon's project. Bachman further stated that Merit Construction Company, Inc., is a separate and distinct corporate entity from Merit General Contractors, Inc., and had no contract or subcontract on the project.

In responding to Merit General Contractors Inc.'s motion for summary judgment, WSM provided nothing to dispute Bachman's statements. Instead, WSM raised several arguments as to why summary judgment should not be granted, including that Merit General Contractors, Inc., had created name confusion and that Merit General Contractors, Inc., had received actual notice of the mechanic's lien.

WSM provided evidence that Merit Construction Company, Inc., and Merit General Contractors, Inc., were registered as separate corporate entities with the Kansas Secretary of State's office.

Based on the information provided by the Kansas Secretary of State's office, both entities were active and in good standing. Both had the same address of 950 Kansas Avenue in Kansas City. Both had the same resident agent in Prairie Village. Merit Construction Company, Inc., had been incorporated in 1991, and Merit General Contractors, Inc., had been incorporated in 1999. Five months before WSM printed the information from the Kansas Secretary of State website, both companies had filed correct annual reports.

Also attached to WSM's response to Merit General Contractors, Inc.'s motion for summary judgment were pages from Merit General Contractors, Inc.'s website. The pages appear to have been printed on May 12, 2006, which was nearly 2 years after WSM filed its mechanic's lien. One of the pages, which appears to be the home page of the website, prominently identified "MERIT General Contractors, Inc.," in bold letters. Another page of the website summarizing the Dillon's Store # 78 project specifies that the project "was the first in a growing series of projects that *MGCI* is performing for Dillons Food Stores . . . ." WSM pointed out that on the principals page of the website, the officers' and professional staff's profiles referred to just "Merit." Nevertheless, the "contact us" pages listed Bachman as the president of Merit General Contractors, Inc., and also listed Don Crabtree as Merit General Contractors, Inc., Business Development.

Apparently, the parties appeared before the court in May 2006 to argue Merit General Contractors, Inc.'s motion for summary judgment. No decision was made at that time on Merit General Contractors, Inc.'s motion for summary judgment. In August 2007, WSM moved to amend its lien statement or, alternatively, for a determination that an amendment was not required. WSM made the following argument as to why the trial court should grant its motion:

"While Merit Construction Co., Inc and Merit General Contractors, Inc. are legal entities organized on different dates, under the above facts they are not separate legal entities for these circumstances. Stan Bachman, the executive officer of each, is the person who received the mechanic's lien, notices, and correspondence detailed above. Mr. Bachman never once raised an issue that a differ-

ent entity should have been addressed. Of course, even on its own website and on internally generated letterhead, Merit makes no such distinction."

WSM requested that the trial court grant it leave to amend its lien statement or that it determine that there was an identity between Merit Construction Company, Inc., and Merit General Contractors, Inc., so that it would be unnecessary to amend the lien statement.

Attached to WSM's motion to amend were photos apparently taken of 950 Kansas Avenue, the address listed for both Merit General Contractors, Inc., and Merit Construction Company, Inc. WSM stated that the photos were taken of the fenced lot, buildings, and the parking area at 950 Kansas Avenue as of June 9, 2006, which was over 2½ years after WSM filed its mechanic's lien. The signage depicted in the pictures showed either "Merit Construction" or "Merit Construction Co." In its motion to amend, WSM alleged that there was no external signage as of June 9, 2006, that showed the name "Merit General Contractors, Inc."

In September 2007, the trial court issued its journal entry of judgment granting Merit General Contractors, Inc.'s motion for summary judgment. The trial court determined that WSM's lien was fatally defective and unenforceable because the lien statement named the wrong general contractor. Accordingly, the trial court denied WSM's claim on the lien bond posted by Inland, as surety for Merit General Contractors, Inc. In responding to WSM's claims that it would be inequitable to enforce the lien statutes in such a rigid manner, the trial court found that no equity jurisdiction was available to it because WSM had a remedy at law. Finally, the trial court denied WSM's motion to amend its mechanic's lien statement in light of its findings that the lien was defective and unenforceable. The trial court determined that it had no authority to permit amendment of WSM's lien after the time for filing the lien had expired.

*Standards of Review*

On appeal, WSM argues that the trial court erred in granting Merit General Contractors, Inc.'s motion for summary judgment.

In reviewing the trial court's decision to grant summary judgment, an appellate court applies the following standard of review:

" ' " 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion' for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citations omitted.]" ' [Citation omitted.]" *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007).

Further, the present case requires this court to decide whether WSM's mechanic's lien statement complied with the statutory provisions relating to mechanics' liens. To the extent that the material facts on this issue are uncontroverted, this court will apply the following standard of review: Whether a mechanic's lien statement complies with statutory requirements is a question of law over which an appellate court exercises unlimited review. See *Buchanan v. Overley*, 39 Kan. App. 2d 171, Syl. ¶ 1, 178 P.3d 53 (2008).

*WSM's Arguments*

WSM raises the following five arguments as to why the trial court's grant of summary judgment was in error: (1) that it is improper to grant summary judgment when discovery is not complete and there are disputed material facts; (2) that the contractor-naming issue evaporates on the facts and actual notice of the lien received by Merit General Contractors, Inc., through Bachman; (3) that the purpose of a statutory requirement must be considered in determining whether the statutory requirement has been met; (4) that Merit General Contractors, Inc., was the source of any apparent confusion and should not benefit from its acts; and (5) that the statutory requirements for a valid mechanic's lien have been met under the facts of this case.

Because mechanics' liens are statutory creatures, we will first consider whether WSM met the statutory requirements to create a valid mechanic's lien. If WSM did meet the statutory requirements, then a valid mechanic's lien was created. On the other hand, if WSM did not meet the statutory requirements, then we must determine whether WSM came within an exception to the statutory requirements.

*I. Did WSM meet the statutory requirements to create a mechanic's lien?*

A mechanic's lien is statutory and can only be created in the manner set forth in the statutes. Parties claiming a mechanic's lien have the burden of bringing themselves clearly within the statutory provisions. *Creme de la Creme (Kansas), Inc. v. R&R Int'l, Inc.*, 32 Kan. App. 2d 490, 493, 85 P.3d 205, *rev. denied* 278 Kan. 844 (2004). Although the mechanics' lien statutory provisions are liberally construed once a lien attaches, the requirements for a lien to come into existence must be strictly met. *J. Walters Constr. Co. v. Greystone South Partnership*, 15 Kan. App. 2d 689, 691, 817 P.2d 201 (1991).

K.S.A. 60-1103 outlines the mechanic's lien requirements in relevant part as follows:

"(a) *Procedure.* Any supplier, subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, subcontractor or owner contractor may obtain a lien for the amount due in the same manner and to the same extent as the original contractor except that:

(1) *The lien statement must state the name of the contractor and be filed within three months after the date supplies, material or equipment was last furnished or labor performed by the claimant.*" (Emphasis added.)

Under K.S.A. 60-1103(a)(1), the contractor must be named in a mechanic's lien statement. The lien statement in this case identified Merit Construction Company, Inc., as the contractor on the Dillon's project. Merit General Contractors, Inc., brought forth evidence in its motion for summary judgment that the proper contractor to be named in the mechanic's lien statement was actually Merit General Contractors, Inc. In responding to Merit General

Contractors, Inc.'s motion for summary judgment, WSM made a variety of arguments as to why its mechanic's lien was valid, including that Merit General Contractors, Inc., had created the name confusion and that Merit General Contractors, Inc., had received notice of the lien. WSM raises those same arguments on appeal. With these arguments, WSM implicitly concedes that its mechanic's lien statement identified the wrong entity, Merit Construction Company, Inc., as the contractor. By naming the wrong entity as the contractor, WSM did not comply with K.S.A. 60-1103(a)(1).

This court has previously decided that a mechanic's lien statement that fails to name the proper contractor is fatally defective. *Tradesmen Int'l, Inc. v. Wal-Mart Real Estate Business Trust*, 35 Kan. App. 2d 146, 153, 129 P.3d 102 (2006). *Tradesmen* involved the exact contractor-naming issue that is involved here. There, Tradesmen, a subcontractor furnishing labor under a contract with another subcontractor, filed a mechanic's lien statement against property owned by Wal-Mart. The lien statement failed to name the contractor as Merit General Contractors, Inc., and instead named Merit Construction Company, Inc., as the contractor. Tradesmen later filed suit to foreclose its mechanic's lien and to recover the amount of its mechanic's lien plus interest and costs from the contractor's payment bond.

Several months after suit was filed, Tradesmen moved to amend its mechanic's lien statement to correctly name Merit General Contractors, Inc., as the proper contractor. The defendants opposed Tradesmen's motion to amend and argued that Tradesmen could not be allowed to amend the lien statement to correctly name the contractor after the statutory period for filing a valid lien had expired. Nevertheless, the trial court allowed Tradesmen to amend its lien statement.

On appeal, this court in *Tradesmen* held that the trial court had no authority to allow the amendment of the lien statement. Recognizing that Tradesmen had failed to create a valid lien against the property by its original mechanic's lien statement, this court stated:

"Here, Tradesmen moved to amend the lien statement to substitute the name of an entirely different company as the contractor. Because the original lien statement contained the name of the wrong contractor, it failed to create a valid lien against the property. 'There is no privity of contract between a subcontractor and a property owner, and the former can obtain a lien only by complying with the statutory provisions. [Citations omitted.]' *Sutherland Lumber Co. v. Due,* 212 Kan. 658, 660, 512 P.2d 525 (1973). Tradesmen did not establish the connection between a subcontractor and the owner of property by naming the contractor as required by K.S.A. 60-1103(a)(1)." 35 Kan. App. 2d at 155.

This court held that Tradesmen, by not following an essential requirement of K.S.A. 60-1103 to name the proper contractor, had failed to bring itself within the statutory provisions to file a valid mechanic's lien.

Determining that Tradesmen's failure to name the proper contractor in the mechanic's lien statement made it vitally defective, this court stated as follows:

"Our Supreme Court has held that a mechanic's lien statement filed by a subcontractor which fails to state the name of the contractor is fatally defective. *Badger Lumber & Coal Co. v. Schmidt,* 122 Kan. 48, Syl. ¶ 1, 251 Pac. 196 (1926). *D.J. Fair Lumber Co. [v. Karlin,* 199 Kan. 366, 430 P.2d 222 (1967),] concluded that K.S.A. 60-1105(b) does not permit 'amendment of a vitally defective lien statement after the statutory period in which to file such lien has expired.' 199 Kan. at 372. Thus, the lien statement was vitally defective when filed and could not be amended to allow Tradesmen to correctly name the contractor." 35 Kan. App. 2d at 157-58.

As a result, this court held that the trial court had no authority to allow the amendment of the lien statement.

Here, the evidence is uncontroverted that WSM failed to name the correct contractor in its mechanic's lien statement. Thus, based on the reasoning in *Tradesmen,* the lien statement was vitally defective when filed. It is also undisputed that WSM failed to move to amend its lien statement to correctly name Merit General Contractors, Inc., as the contractor before the statutory period for filing a valid lien had expired. By not following an essential requirement of K.S.A. 60-1103 to name the proper contractor, WSM failed to bring itself within the statutory provisions to file a valid mechanic's lien.

Nevertheless, WSM suggests that it should be excused from the contractor-naming requirement of K.S.A. 60-1103 based on the unique facts of this case and equitable considerations. Hence, our analysis turns to whether there is an exception that would excuse WSM's failure to meet the statutory requirements of K.S.A. 60-1103 to create a valid mechanic's lien.

## II. Should WSM be excused from the contractor-naming requirement of K.S.A. 60-1103(a)(1)?

WSM suggests that it should be excused from the contractor-naming requirement of K.S.A. 60-1103(a)(1) because Merit General Contractors, Inc., itself created the confusion as to its name and identity and because Merit General Contractors, Inc., through Bachman, received actual notice of the mechanic's lien. WSM argues that under those facts, there is no need to distinguish between the two "Merit companies," which were located at the same address and managed by the same individual.

Nevertheless, WSM's argument that Merit General Contractors, Inc., created the confusion as to its name and identity is disingenuous given the fact that much of the evidence cited by WSM to support its argument was gathered years after WSM filed its mechanic's lien. Specifically, in its appellate brief, WSM refers to pictures that it took of 950 Kansas Avenue, the address listed for both Merit General Contractors, Inc., and Merit Construction Company, Inc., and to pages that it printed from the website of www.meritkc.com. Nevertheless, the pictures were taken in June 2006 and the website pages were printed in May 2006, which dates were approximately 2½ years after WSM filed its mechanic's lien. Such evidence cannot be used to show that Merit General Contractors, Inc., had created the confusion as to its name and identity at the time WSM filed its mechanic's lien. Moreover, even if the website pages could be used to show confusion, any probative value of this evidence would be diminished by the fact that Merit General Contractors, Inc., was clearly and specifically identified throughout the website.

Moreover, two problems exist with WSM's argument — one based on knowledge and one based on the record. The biggest

hurdle facing WSM in this case is that WSM had actual knowledge of the correct name of the general contractor before the mechanic's lien was filed. Approximately 6 months before WSM filed its mechanic's lien, it had prepared and signed a mechanic's lien waiver form that was directed to and clearly named Merit General Contractors, Inc. When questioned in her deposition about whether the lien waiver form had been sent to her by Goss, Hart testified that the lien waiver form was a WSM standard form prepared by her:

"And do you recognize the handwriting on the partial lien waiver for the Dillon's No. 79 store?
"[Hart:] Yes; it is mine.
"Is all of the handwriting on this piece of paper yours?
"[Hart:] All of it except the notary's handwriting.
"Okay. Was this a form that you were provided by Goss, or did you prepare this form?
"[Hart:] *I prepared the form.*
*"Is this a standard form you use on a regular basis?*
"[Hart:] *When our customer does not have their own form, then we do use this form.*" (Emphasis added.)

Based on Hart's testimony, WSM prepared the lien waiver form, which had Merit General Contractors, Inc.'s name listed on the form. Having the correct name of the general contractor in its files, WSM cannot now claim that it had been misled or confused as to the proper contractor. As the attorney for Merit General Contractors, Inc., asserted during her oral argument before this court, WSM could have named "Merit Construction Company, Inc., or Merit General Contractors, Inc., or both" in its mechanic's lien statement if it was confused as to which entity was the correct general contractor on the construction project.

At the very least, the mechanic's lien waiver form put WSM on implied notice, which is sometimes called implied actual notice, that Merit General Contractors, Inc., was the general contractor on the Dillon's project. Implied notice is notice "that is inferred from facts that a person had a means of knowing and that is thus imputed to that person." Black's Law Dictionary 1090 (8th ed. 2004). Implied notice is also "actual notice of facts or circumstances that, if properly followed up, would have led to a knowledge

of the particular fact in question." Black's Law Dictionary 1090-91. Here, WSM had actual notice that Merit General Contractors, Inc., was the general contractor on the Dillon's project. If WSM had properly followed up on this information and made an inquiry, it would have led WSM to the correct name of the general contractor on the Dillon's project. In light of WSM's actual notice of the correct general contractor, WSM's arguments as to name confusion by Merit General Contractors, Inc., are not sound.

Furthermore, the record is devoid of any evidence showing that WSM did any due diligence in attempting to learn the correct name of the general contractor before filing its mechanic's lien. In fact, the record contains a contract between The Kroger Co., the owner of Dillon's, and Merit General Contractors, Inc., for the Dillon's project. The record also contains a contract between Goss and Merit General Contractors, Inc., on the Dillon's project. Throughout both of those contracts, Merit General Contractors, Inc., was clearly identified as the contractor on the Dillon's project. Moreover, there are letters, an emergency contact form, and sample invoices attached to the contract between Goss and Merit General Contractors, Inc., which clearly name Merit General Contractors, Inc. Hence, the record shows that if WSM had exercised due diligence and had attempted to verify the correct name of the general contractor, it would have been able to ascertain that Merit General Contractors, Inc., was indeed the general contractor on the Dillon's project.

*Various Cases Cited in WSM's Appellate Brief*

In its appellate brief, WSM fails to cite any cases that have the circumstances present here. Instead, in arguing that Merit General Contractors, Inc., was not actually confused by the wrong name in WSM's lien statement, WSM cites several cases that are not on point with this case. See *Trane Co. v. Bakkalapulo*, 234 Kan. 348, 672 P.2d 586 (1983) (mechanic's lien statement's verification, which was signed by attorney for corporate subcontractor, was not defective for failing to state attorney's representative capacity in verification statement; redundant for affiant to restate representative capacity in affidavit where it already appeared in lien state-

ment being verified); *J. Walters Constr. Co.*, 15 Kan. App. 2d 697 (determining that statements of labor and material that were attached to lien statement were sufficient to meet the " 'not too demanding' " standard used in testing the adequacy of the itemization of labor and materials furnished); *Kopp's Rug Co. v. Talbot*, 5 Kan. App. 2d 565, 620 P.2d 1167 (1980) (holding that service of notice of lien statements on homeowners was sufficient even though endorsement stated "return receipt requested" instead of "return receipt requested showing address where delivered" where service was handled in same manner and where homeowners received and signed for address shown on return receipt; moreover, actual notice was sufficient under statute).

None of those cases cited above involved the situation that is present here: the filing of a mechanic's lien statement that failed to name the correct general contractor. Contrary to the instant case, the lien statements in those cases were not fatally defective. As a result, they do not support WSM's argument here.

WSM also cites two cases that dealt with the amendment of pleadings under K.S.A. 60-215(a). See *Marr v. Geiger Ready-Mix Co.*, 209 Kan. 40, 495 P.2d 1399 (1972); *Anderson v. United Cab Co.*, 8 Kan. App. 2d 694, 666 P.2d 735 (1983). Again, those cases are inapplicable here. Because neither case deals with the statutory creation of a valid mechanic's lien, they do not have application to the instant case.

*Prejudice*

Moreover, the fact that Bachman, the president of Merit General Contractors, Inc., received a copy of the mechanic's lien statement and, therefore, Merit General Contractors, Inc., may not have been prejudiced by WSM's failure to name the proper contractor should not carry the day in this case. As we discussed in *Tradesmen*, the issue of prejudice does not enter into the consideration of whether a valid mechanic's lien has been created:

"In our extensive research on this issue, however, we have not discovered a case which has considered the issue of whether defendants have been prejudiced by deficiencies in a lien statement. Instead, we find that the cases consistently hold to the rules that parties can only create a mechanic's lien by strictly following

the requirements contained in the statutory provisions and that those parties have the burden of bringing themselves within the statutory provisions. [Citations omitted.]" 35 Kan. App. 2d at 157.

This court cited to *D.J. Fair Lumber Co.*, 199 Kan. 366, where our Supreme Court recognized the well-settled rule that equitable considerations ordinarily do not give rise to a mechanic's lien and that a subcontractor can only obtain a mechanic's lien by compliance with statutory provisions. As a result, the issue of whether Merit General Contractors, Inc., suffered any prejudice in this case should not enter into this court's consideration of whether a valid mechanic's lien had been created.

*Name Confusion*

In the final part of its appellate brief, WSM maintains that the statutory requirements for a valid mechanic's lien have been met on the facts of this case. Nevertheless, based on our previous analysis, the proper contractor was not named in WSM's mechanic's lien statement. We discussed previously that in order to have a valid mechanic's lien under K.S.A. 60-1103, the correct contractor must be named in the mechanic's lien statement.

Instead of showing this court that Merit Construction Company, Inc., was actually the general contractor on the Dillon's project, WSM makes the following argument: "The company which now attempts to call itself Merit General Contractors, Inc., does not distinguish itself from Merit Construction Co., Inc. In such circumstances, Merit should not be permitted any advantage by the confusion of name it has created." WSM cites *Scott v. Strickland*, 10 Kan. App. 2d 14, 691 P.2d 45 (1984), to support its argument.

In *Strickland*, this court affirmed the trial court's decision allowing amendment under K.S.A. 60-1105(b) of a lien statement to add a joint owner. Jerry Wilson, d/b/a Woods-Ringstaff Lumber Company (Woods-Ringstaff), filed a mechanic's lien for an unpaid lumber bill. Although the property on which the mechanic's lien was filed was owned by Cecilia and Jimmie Scott in joint tenancy, the original lien statement only named Jimmie as the owner. After the statutory filing period had expired, Woods-Ringstaff was allowed to amend its mechanic's lien to add Cecilia as an owner.

Woods-Ringstaff later obtained a judgment to foreclose its mechanic's lien on the subject property. On appeal, the Scotts argued that the failure of the original lien statement to name Cecilia as an owner and thus to attach to her interest in the property could not be cured by amending the statement after the statutory filing period had expired. In rejecting the Scotts' argument, this court relied on *Logan-Moore Lumber Co. v. Black*, 185 Kan. 644, 651, 347 P.2d 438 (1959), where our Supreme Court stated that there is an identity of ownership among spouses so that an amendment to a valid lien against one spouse to add the name of the other spouse is proper. This court concluded that the trial court properly allowed amendment of the mechanic's lien statement to name Cecilia as an owner. *Strickland,* 10 Kan. App. 2d at 22.

The Scotts also argued that the mechanic's lien statement was deficient because it failed to specifically identify Forrest Strickland as the contractor. Nevertheless, the lien statement did name Strickland as receiving the materials provided on behalf of the Scotts. This court stated that the job and authority upon which Woods-Ringstaff provided the building material were identified by the inclusion of Strickland's name in the lien statement. Thus, this court concluded that the lien statement adequately identified Strickland as the contractor. *Strickland,* 10 Kan. App. 2d at 23.

Contrary to *Strickland,* the instant case does not encompass an "identity of ownership" situation. In *Strickland,* Woods-Ringstaff was merely attempting to add a joint owner to an already valid mechanic's lien. The mechanic's lien had already attached to the husband's interest in the property because he had been named in the original lien statement. The *Strickland* court noted that "[a] mechanic's lien may attach to any interest in the land held by the person for whom the materials were provided. In other words, a person holding any legal or equitable interest in realty may be an owner for the purposes of the mechanics' lien statutes. [Citation omitted.]" 10 Kan. App. 2d at 22.

Here, WSM's mechanic's lien statement never identified a correct contractor. In fact, WSM's mechanic's lien statement contained no reference to Merit General Contractors, Inc. WSM seeks to amend its mechanic's lien statement to identify an entirely sep-

arate entity. As a result, *Strickland* cannot be applied to the instant case. Moreover, the substitution of separate and distinct entities has been rejected in *Logan-Moore Lumber Co. v. Black*, 185 Kan. 644, Syl. ¶¶ 1 and 3.

*Equitable Considerations*

In further arguing that Merit General Contractors, Inc., is the source of any apparent confusion and should not benefit from its acts, WSM attempts to compare this case to *United States v. MPM Contractors, Inc.*, 763 F. Supp. 488 (D. Kan. 1991). Nevertheless, *MPM Contractors* is both factually and legally distinguishable from the present case. First, *MPM Contractors* involved the issuance of a preliminary injunction to stop asbestos removal companies and their principal from disturbing the status quo and moving any assets beyond the jurisdiction of the court while an action for violations of the Clean Air Act was pending. Here, we are dealing with the validity of a mechanic's lien, which is a creature of statute under K.S.A. 60-1103. K.S.A. 60-1103 sets out specific requirements that must be met in order for a mechanic's lien to attach to property. Failure to meet those statutory requirements means that a valid lien was never created.

Second, there was significant evidence presented in *MPM Contractors* that McGill, the general manager of MPM and ARC, had treated the two corporations as one entity. The court in *MPM Contractors* cited the following factors to determine whether two corporations should be treated as separate entities or as the same entity: (1) undercapitalization of a one-person corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (7) the use of the corporate entity in promoting injustice or fraud. Here, there was no indication that any of those factors were present.

Finally, the doctrines applied in *MPM Contractors* are based on equitable considerations. Nevertheless, recognizing that equitable

considerations do not ordinarily give rise to a mechanic's lien, our Supreme Court has stated:

" 'It is a settled rule in this state that equitable considerations do not ordinarily give rise to a mechanic's lien. Being created by statute, a mechanic's lien can only arise under the circumstances and in the manner prescribed by the statute. A lien claimant must secure a lien under the statute or not at all. [Citation omitted.] The validity of a lien created solely by statute depends upon the terms of the statute, and parties may not by estoppel enact or enlarge a statute. [Citation omitted.] There is no privity of contract between the subcontractor and the owner, and the [subcontractor] can only obtain a lien by compliance with the statutory provisions. It is not enough that [the subcontractor] has furnished the material and filed a lien.' " *D.J. Fair Lumber Co.*, 199 Kan. at 369.

Because the doctrines in *MPM Contractors* are based on equitable considerations, they are not readily applicable to the case at hand.

Pointing out that equitable considerations have previously given rise to a valid lien, WSM cites *Adair v. Transcontinental Oil Co.*, 184 Kan. 454, 338 P.2d 79 (1959). In *Adair*, our Supreme Court created an exception to the rule under Kansas law calling for strict construction of a lien statute in determining to whom and for what a lien statement gives a lien. Our Supreme Court held as follows:

"Where a number of oil and gas leases are operated as a single unit and materials are furnished or labor is performed under a single contract for the development of the leases, a single lien statement timely filed creates a valid and enforceable lien upon all such leases, which may be sold to satisfy the lien." 184 Kan. 454, Syl. ¶ 3.

Recognizing that such a rule was necessary to prevent fraud, our Supreme Court stated as follows:

"The oil industry is fraught with brilliant and ingenious minds, some of which, lured to the industry by the element of chance and potentially fabulous profits, are bent upon sharp practices. The law must be ever vigilant to prevent fraud. If permitted to evade the lien statute by an independent conditional sales contract as set forth in the instant case, it would be possible for an unscrupulous oil and gas operator possessed of leases with questionable productive capacity to defeat just claims of the unwary who perform labor and supply materials in development of such oil and gas leases." 184 Kan. at 472.

Our Supreme Court stated that "[i]t would be relatively simple to organize an expendable, controlled corporation with limited assets with which to make an independent contract for the development

of the leases and conveniently defeat the liens in the event of failure, or to contract with an insolvent and accomplish the same result." 184 Kan. at 472.

*Adair* created a narrow exception, based on equitable considerations, to the strict construction of a lien statutes in determining to whom and for what a lien statement gives a lien. The circumstances present in this case do not fit within the exception outlined in *Adair*. Moreover, our Supreme Court in *Adair* made clear that the exception was made to prevent unscrupulous practices or fraud by oil and gas operators against those providing labor or materials in the development of such oil and gas leases. Such an exception is not warranted here.

Here, any equitable argument made by WSM is defeated by the uncontroverted fact that it had actual knowledge of Merit General Contractors, Inc., as the general contractor on the Dillon's project. With the correct name of the general contractor in its files, WSM should not be able to successfully argue that it was confused as to who the general contractor was on the Dillon's project. As discussed previously, the lien waiver form provided at the very least actual notice of Merit General Contractors, Inc.'s name that, if properly followed up, would have led it to definitively determine that Merit General Contractors, Inc., was the actual general contractor on the Dillon's project. WSM's failure to exercise due diligence by investigating the matter a little further cannot provide it with an equitable basis for relief.

How WSM in good faith can blatantly assert that name confusion was involved in improperly naming the general contractor is difficult to understand (especially when WSM had prepared and approved a lien waiver showing the name of the general contractor). There may be cases where a mechanic's lien application should be excused from the contractor-naming requirement under K.S.A. 60-1103 based on the unique circumstances of the case or on equitable considerations, but this case does not appear to be one of them. As a result, WSM cannot be excused from the contractor-naming requirement of K.S.A 60-1103 in order for a valid mechanic's lien to attach.

*III. Should the trial court have granted summary judgment when discovery was not complete?*

WSM maintains that it was improper for the trial court to grant summary judgment in this case when discovery was not complete and there were disputed material facts. WSM asserts that "[w]ho Merit is" is a disputed material fact that should have been resolved before summary judgment was granted.

"Ordinarily, a summary disposition of a pending case before the district court should not be granted until discovery is complete. [Citation omitted.]" *Montoy v. State*, 275 Kan. 145, 149, 62 P.3d 228 (2003). "However, if the facts pertinent to the material issues are not controverted, summary judgment may be appropriate even when discovery is unfinished. [Citation omitted.]" *Med James, Inc. v. Barnes*, 31 Kan. App. 2d 89, 96, 61 P.3d 86, *rev. denied* 275 Kan. 965 (2003). An issue of fact is genuine when it has legal controlling force as to the controlling issue. A disputed question of fact that is immaterial to the issue does not preclude summary judgment. If a disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of material fact. *Muhl v. Bohi*, 37 Kan. App. 2d 225, 229, 152 P.3d 93 (2007).

As Merit General Contractors, Inc., points out, the question of "[w]ho is Merit?" is not a material fact in dispute and is not a mystery. WSM solved any mystery of "[w]ho Merit is" well before filing its lien statement when it filled out and signed the June 30, 2003, lien waiver form that clearly designated the proper contractor. It is uncontroverted that Merit General Contractors, Inc., was the actual contractor on the Dillon's project and that WSM failed to name Merit General Contractors, Inc., in its mechanic's lien statement. Based on the material uncontroverted facts of this case, we determine that the trial court properly granted summary judgment to Merit General Contractors, Inc.

*IV. Should this court consider WSM's bond claim?*

In its reply brief, WSM maintains that it has an unresolved claim, based on statutory and case law, against the bond issued by Inland on the Dillon's project.

In June 2004, WSM filed a bond claim and cross-claim against the mechanic's lien bond number 406120-1 executed by Inland and Merit General Contractors, Inc. WSM requested that the trial court determine WSM's rights in and to the bond and grant it a judgment for the amount of the mechanic's lien, plus interests, fees, and costs, against the bond. In the September 17, 2007, journal entry, the trial court ruled that WSM's "claim on the lien bond posted is DENIED."

In its notice of appeal, National stated that it was appealing from the trial court's "ruling on September 17, 2007, in its Journal Entry sustaining the Motion for Summary Judgment filed by Merit General Contractors, Inc., on March 30, 2006, to the Kansas Court of Appeals."

In its appellant's brief filed with this court, WSM made no argument concerning its bond claim. Instead, the bond claim issue has surfaced for the first time on appeal in WSM's reply brief. After Merit General Contractors, Inc., received WSM's reply brief, it moved to strike the reply brief or, alternatively, to file a responsive brief. Merit General Contractors, Inc., argued that WSM's bond claim had not been raised in its initial appellant's brief and also that Inland had not been named as a party to this appeal. This court denied Merit General Contractors, Inc.'s motion to strike WSM's reply brief but advised the parties that the reply brief would "only be considered to rebut new material contained in [Merit's] brief." See Supreme Court Rule 6.05 (2008 Kan. Ct. R. Annot. 43). This court further stated that "[t]o the extent [WSM's] reply brief seeks to add additional issues, or re-argue issues already contained its opening brief, such arguments will not be considered."

It is well established that new issues raised in a reply brief are not properly before this court. This practice violates Supreme Court Rule 6.05 and also denies an appellee the opportunity to respond to such issues. See *Ortiz v. Biscanin*, 34 Kan. App. 2d 445,

122 P.3d 365 (2004); *Cessna Aircraft Co. v. Metropolitan Topeka Airport Authority*, 23 Kan. App. 2d 1038, 1044-45, 940 P.2d 84 (1997); *In re Marriage of Powell*, 13 Kan. App. 2d 174, 177, 766 P.2d 827 (1988). Because the bond claim issue was not addressed in WSM's initial brief, we decline to address WSM's argument.

Affirmed.