NOT DESIGNATED FOR PUBLICATION

No. 128,851

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALL STATES HOME IMPROVEMENT, LLC,
*Appellee*,

v.

KELLY BELTZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; KATHLEEN N. WATSON, magistrate judge. Submitted without oral argument. Opinion filed April 17, 2026. Reversed and remanded with directions.

*Joshua S. Albin*, of Adams Jones Law Firm, P.A., of Wichita, for appellant.

*Michael A. Priddle*, of Law Office of Michael A. Priddle, LLC, of Wichita, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: All States Home Improvement, LLC (All States), filed a breach of contract action against Kelly Beltz, alleging default on a contract for a bathroom remodel. Beltz answered, claiming the contract had been rescinded. After some initial discovery, All States filed a motion for summary judgment, which a magistrate judge granted.

On appeal, Beltz argues that genuine issues of material fact should have precluded summary judgment. We agree. Whether Beltz ever received a notice that required him to rescind the contract in writing remained in dispute. And a genuine issue of material fact

also remained as to the amount of damage suffered by All States since it did not complete the project. Accordingly, we reverse and remand for trial.

FACTUAL AND PROCEDURAL BACKGROUND

On February 13, 2024, All States entered into a contract with Kelly Beltz to complete a bathroom remodeling project. The contract was signed by Beltz and a representative of All States, Megan Napolitano-Robe. The total contract price was $14,341, to be paid at $204.92 per month over 120 months, with payments starting 30 days after project completion.

On July 23, 2024, All States filed a petition in district court alleging Beltz was in default under the contract. It claimed that Beltz had not paid the sum owed and All State had suffered damages because it had purchased materials, paid for labor, and paid commissions related to the contract. Beltz answered, claiming he had properly rescinded the contract.

On September 26, 2024, All States filed a motion for summary judgment. At the time All States filed its motion, discovery was not complete. As a result, on October 17, 2024, Beltz asked for additional time to answer the motion so that he could review All States' discovery responses. An agreed order was filed the following day, allowing Beltz to file his response to the summary judgment motion within 30 days of receiving All States' discovery responses. All States' discovery was provided to Beltz on October 21, 2024. On November 20, 2024, Beltz asked for an additional seven days to file his response to All States' motion for summary judgment. All States objected, stating Beltz did not provide reasons for needing additional time and the requested extension would not give All States proper time to reply prior to the hearing on the motion for summary judgment. Beltz responded by filing a motion asking for an additional extension through December 4, 2024, and also requesting a continuance of a December 6, 2024, hearing on

2

the summary judgment motion. Ultimately, Beltz filed his response to the motion for summary judgment on December 2, 2024. On December 3, 2024, All States filed a reply to Beltz' response to the motion for summary judgment.

A hearing was held on the summary judgment motion on December 6, 2024. The magistrate judge began the proceeding by stating, "Let's then start with the plaintiff's motion for summary judgment. And I'm going to just note that more time to respond to the summary—the request for more time to respond to that are going to be denied based off of the proffer that the defendant's ready to move forward." All States responded to the magistrate judge that it believed Beltz' response was untimely and that the motion should therefore be considered uncontroverted. But the magistrate judge denied All States' request, stating, "I think since everybody's here, it's worth it to hear. . . the legal arguments." The court considered the merits of the motion for summary judgment.

All States argued there were no controverted material facts precluding summary judgment. It claimed Beltz entered a contract with All States, failed to rescind it in writing, and did not pay under the terms of the contract. All States asserted it provided Beltz with a "3 Day Rescission Notice" at the time the contract was signed, and that form required written notice to cancel the contract. In response, Beltz admitted that he knew he needed to cancel the contract within three days but believed he had done so. Beltz claimed he was not aware the rescission needed to be in writing and denied receiving the "3 Day Rescission Notice" form from All States. Beltz also contested damage as All States did not complete the project. Beltz questioned whether All States ordered supplies after Beltz orally rescinded the contract. Beltz argued that these genuine issues of material fact precluded summary judgment.

On January 13, 2025, the magistrate judge signed an order allowing Beltz' attorney to withdraw from the case. By the time the judge signed the order, Beltz' attorney had been suspended from the practice of law, and the court had directed All States to send the

3

order to Beltz directly pursuant to Kansas Supreme Court Rule 170 (2025 Kan. S. Ct. R. at 230). Counsel for All States mailed the proposed order to Beltz on January 8, 2025. On January 23, 2025, counsel for All States filed a Rule 170 certificate noting that Beltz had filed no objections to the proposed order. On January 23, 2025, the magistrate judge signed the order. In the order, the magistrate judge first found that Beltz entered into a written agreement with All States on February 13, 2024.

As to rescission, the order stated:

"The written contract signed by Defendant expressly provided that 'the owner may cancel the transaction at any time up to midnight of the third business day after the date the owners sign this contract. See attached Notice of Rescission Form.[] The owners acknowledge receiving a copy of the Notice of Rescission Form. The owners acknowledge receipt of a copy of this agreement and the terms and conditions.' *Exhibit D to Plaintiff's motion which was signed by Defendant on February 13, 2024.* The affidavits of Plaintiff (Exhibits B and C) clearly show that the Notice of Rescission Form was given to Defendant as part of Exhibit D, that Defendant acknowledged receipt of the Notice of Rescission form, that Defendant authorized Plaintiff to do the work in Exhibit D and that Defendant accepted the terms and conditions of the written contract in Exhibit D. Defendant did not maintain any file or documents relating to the Plaintiff to dispute this fact. *Defendant's Responses to Requests for Production, ¶ 2, 3.* As a result, there is no genuine issue of material fact."

The court further found,

"As a result, the Court does not find the Defendant's bare allegation as to not knowing he had to provide written notice of rescission (which is contrary to his signed written agreement) or that he provided verbal rescission within three days of the cont[r]act, despite no evidence thereof, to be credible or sufficient to meet Defendant's burden to set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof."

The court awarded the full amount of the contract to All States, which was "$14,389.74, as of May 15, 2024, together with contract interest at fifteen percent until paid in full, plus all costs and service of process fees of $169.92, and attorney fees and costs to collect the judgment." The court's factual findings as to the actual damage suffered by All State were limited:

> "Defendant provided no credible evidence that the numbers in Plaintiff's Petition were not correct. To the contrary, Plaintiff provided Defendant with discovery responses showing amounts incurred in materials and labor, overhead, profit, and attorney fees and costs at that time. There is no genuine issue of material fact as to nonpayment and the amounts owed in the Petition."

Beltz timely appeals.

ANALYSIS

DID THE COURT ERR IN GRANTING ALL STATES' MOTION FOR SUMMARY JUDGMENT?

*Standard of Review*

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]" *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

5

Put another way, as an appellate court, we are "required to read the record in the light most favorable to the party who defended against the motion for summary judgment. Summary judgment must be found improper where the appellate court finds that reasonable minds could differ as to the conclusions drawn from the evidence." *Hammig v. Ford*, 246 Kan. 70, 73, 785 P.2d 977 (1990).

Additionally, the interpretation of a statute calls for our unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

*Beltz' response to All States' motion for summary judgment was timely.*

As a preliminary matter, we consider All States' claim that Beltz' response to the summary judgment motion was untimely. All States argues that because Beltz' response was untimely, the facts in the motion must be considered uncontroverted.

All States filed its petition as a limited action under Chapter 61 of the Kansas Statutes Annotated. Therefore, the deadline for Beltz to respond to All States' summary judgment motion is controlled by K.S.A. 61-2912(i), which adopts K.S.A. 60-256 as part of the Rules of Civil Procedure for Limited Actions. Under K.S.A. 60-256(c)(1)(B), Beltz had 21 days to respond to All States' motion for summary judgment.

All States filed its motion for summary judgment on September 26, 2024. Due to outstanding discovery owed by All States, the parties agreed to extend the deadline to respond to the motion for summary judgment for 30 days, running from when All States provided its discovery answers to Beltz. All States provided the outstanding discovery on October 21, 2024.

As we consider the following dates, we keep in mind that under K.S.A. 60-206(a)(1), we must "[e]xclude the day of the event that triggers the period," "count every

6

day, including intermediate Saturdays, Sundays and legal holidays," and "include the last day of the period," unless that day falls on a weekend or legal holiday, in which case "the period continues to run until the end of the next day" that is not a weekend or legal holiday.

Under the agreed extension order, Beltz had 30 days to file his response, running from when All States provided its discovery answers on October 21, 2024. Excluding October 21, 2024, this made Beltz' response due on November 20, 2024. On that day, within the 30-day agreed extension, Beltz asked for an additional seven days to file his response to All States' motion for summary judgment. Had the court granted that motion, Beltz' response would have been due on November 27, 2024. On that day, again within the time of the requested extension, Beltz asked for a second extension to December 4, 2024. Beltz filed his response on December 2, 2024. All States filed its reply to Beltz' response on December 3, 2024.

The court did not rule on either of Beltz' motions for extensions of time until the hearing on the summary judgment motion held on December 6, 2024. At that hearing, the magistrate judge stated, "Let's then start with the plaintiff's motion for summary judgment. And I'm going to just note that more time to respond to the summary—the request for more time to respond to that are going to be denied based off of the proffer that the defendant's ready to move forward." Counsel for All States responded to the court that technically the response was untimely and the motion should be considered uncontroverted, but the magistrate judge replied, "I think since everybody's here, it's worth it to hear . . . the legal arguments." The court then went on to consider the merits of the motion for summary judgment. We find that by its comments and actions, the court granted the motions for extension of time. A court may extend the time to respond for good cause, "[w]ith or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." K.S.A. 60-206(b)(1)(A). Here, Beltz' motions for extension of time were made before the agreed deadline and requested

extension deadline expired. And Kansas Supreme Court Rule 141(b)(2) (2025 Kan. S. Ct. R. at 217) allowed the court to extend the response to be filed beyond the 21-day deadline by court order.

We acknowledge that the written order granting summary judgment includes language that is contrary to that the magistrate judge used when ruling from the bench. The written order stated:

> "K.S.A. 60-256(c)(1)(B) required Defendant to file his Response to Plaintiff's motion for summary judgment within 21 days or summary judgment should be granted. Plaintiff filed its motion September 26, 2024. Defendant filed his Response December 2, 2024. Defendant's two motions for more time to answer were denied. As a result, Defendant's Response was untimely."

But the wording that appears in the written order does not reflect how the court ruled from the bench.

The written order was created under unique circumstances. After the court ruled from the bench on December 6, 2024, the attorney for All States circulated an order to Beltz' attorney, who objected to the language. According to Beltz, in response to the objection, on January 8, 2025, the magistrate judge corresponded with both attorneys and asked for a Microsoft Word version of the proposed order. On the same day, Beltz' attorney gave notice of her license suspension to the court. In response, the court ordered All States' attorney to submit the Journal Entry via Kansas Supreme Court Rule 170 to Beltz directly. The attorney for All States did so by mailing a copy of the proposed order to Beltz on January 8, 2025. While these events were occurring, Beltz' attorney moved to withdraw on January 10, 2025, and the court granted the request on January 13, 2025. All States' attorney filed a Rule 170 certification on January 23, 2025, noting no objection from Beltz, and the court signed the order on that same day.

8

In the end, the discrepancy between the court's order from the bench and its written order is resolved by closely examining the court's comments at the time of the hearing and the fact that in its written order it still considered the merits of Beltz' claim. While the court could have been clearer in its ruling, the language used by the court as well as the action of allowing the motion hearing to proceed on the merits tells us the court intended to grant Beltz' motions for extension of time. We find that Beltz' extensions were requested prior to the expiration of the applicable period, and the court granted the extensions. Beltz' response was timely.

*Genuine issues of material fact precluded summary judgment.*

We start our analysis with the general principle that genuine issues of material fact preclude summary judgment. "'When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.'" *National Restoration Co. v. Merit General Contractors*, 41 Kan. App. 2d 1010, 1018, 208 P.3d 755 (2009).

Beltz makes two arguments related to this principle. First, he argues that a genuine issue of material fact remained as to whether he received notice that his rescission of the contract had to be made in writing. Second, he argues that a genuine issue of material fact remained as to any damage that was suffered by All States.

*Rescission*

*All States' claim is based on anticipatory breach of contract.*

Our discussion on rescission begins with an analysis of the breach of contract claim brought by All States against Beltz.

9

"The elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach." *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083 (2013).

In its petition, All States claimed that Beltz entered into a written agreement with All States for home improvement custom materials and services on or about February 13, 2024. All States claimed that Beltz did not rescind the contract in writing, as required under the contract, and instead provided oral notice he would not perform under the contract. Once Beltz informed All States he intended to rescind the contract, All States began making demands on Beltz to pay. When Beltz failed to do so, All States brought suit for breach of contract, claiming Beltz owed the entire contract amount of $14,389.74, plus interest, court costs, service of process fee, attorney fees, and all costs and fees to collect the judgment.

As to the contract element of breach, All States' claim is one for anticipatory breach of contract. To bring a claim for an anticipatory breach of contract, the plaintiff must show that there was "'a clear and unequivocal refusal to perform'" a contractual obligation before performance was due. *Hefner v. Deutscher*, 58 Kan. App. 2d 58, 75, 464 P.3d 367 (2020).

We pause here to note one argument made by Beltz pertaining to anticipatory breach. On appeal, Beltz argues that there was no evidence presented by All States within its motion for summary judgment that Beltz clearly and unequivocally refused to perform his portion of the contract, and as a result, All States was not entitled to summary judgment. First, Beltz failed to raise this argument in district court and it is not properly preserved for appeal. "Generally, appellate courts do not address issues raised for the first time on appeal." *Schutt v. Foster*, 320 Kan. 852, 855-56, 572 P.3d 770 (2025). Beltz has not argued for any exception to our general rule.

10

But even if we were to reach the merits of the argument, Beltz ignores the fact he claimed to have left messages for Megan Napolitano-Robe informing her he was rescinding or cancelling the contract. And Beltz claimed he told Cris Keeter of All States that he did not intend to pay under the contract. By Beltz' own admissions, there is evidence in the record that Beltz clearly and unequivocally refused to pay under the contract. Thus, there is no merit to Beltz' claim that a lack of evidence on this point should have precluded summary judgment.

*The facts related to whether Beltz received notice of the written rescission requirement were material.*

To avoid summary judgment, the facts the nonmoving party claim are in dispute must first be material. Disputed facts are material if they "have legal controlling force as to the controlling issue." *Unified Gov't of Wyandotte County v. Trans World Transp. Svcs.*, 43 Kan. App. 2d 487, 490, 227 P.3d 992 (2010).

All States' claim is one based on an anticipatory breach of contract. Whether Beltz committed an anticipatory breach depends on whether he lawfully refused to perform under the contract. All States claims Beltz wrongfully refused to perform because he failed to rescind the contract in writing and subsequently failed to pay. But Beltz counters that his rescission was lawful because he was under no requirement to rescind the contract in writing. He claims the contract he signed did not contain any provision that required a written rescission, and that in fact he completed a legal, oral rescission. Resolving this dispute requires a determination of whether Beltz was ever put on notice that he was required to rescind the contract in writing. This determination will have "legal controlling force as to the controlling issue." 43 Kan. App. 2d at 490. Thus, we find whether Beltz received notice of the written rescission requirement was a material fact.

*Whether Beltz received notice of the written rescission requirement was genuinely disputed.*

We turn next to whether this material fact was genuinely disputed, and we begin with a review of the summary judgment motion, response, and reply, and an examination of the evidence that was attached by the parties to those pleadings. Both All States and Beltz supported their respective pleadings with the purported contract documents attached as exhibits. We note that the group of documents submitted by the parties purporting to be the contract contain pages that are non-sequential and unnumbered. We pause to explain the irregularities that appear in the contract as it was submitted by each party.

The first two pages of the agreement as submitted by All State appear to be one single document. The first page references All States' company and includes a project description: "Project Name: 2024 BATH." The pages are numbered sequentially ending with "Page 2 of 2." Beltz' copy of the agreement, attached to his response as an exhibit, contains these same forms. There appear to be no irregularities concerning these pages.

Then, the next document contained in All States' version of the contract is untitled but starts with the language at the top of the page, "Contractor agrees to provide services and material set forth in writing in this agreement." It is unclear whether this document is intended to stand alone, or whether it was part of a larger document. At the bottom of the page, there is a signature line for both Megan Napolitano-Robe and Beltz. But this document is numbered "Page 3 of 6," and it is missing pages 1 and 2 as well as pages 4 through 6. Beltz submitted this same document as part of his response.

The next document in the contract as submitted by All States Home is titled "3 Day Rescission Notice," is unsigned, and numbered "Page 1 of 1." Beltz denies having received this document and it is not attached to his response.

12

The next document in All States' version of the contract is an "All States Home Improvement Bonus Plan" document. Beltz did not include this document and does not address whether or not he believes he received it.

The next document in All States' version of the contract is labeled "Terms and Conditions" and is numbered "Page 1 of 1." It is followed by a document labeled "Special Circumstances Siding/Windows/doors" and numbered "Page 1 of 2," but no page 2 follows. Beltz submitted both of these documents in his exhibit as well.

The final document is titled "All States Home Improvement LLC Scheduling & Project Access" and is numbered "Page 1 of 1." Beltz also submitted this document. No other documents were submitted by the parties purporting to be part of the contract.

We draw two conclusions from the form of the contract documents submitted by both parties. First, they appear to be a series of unnumbered and incompletely numbered documents, and second, Beltz' packet of documents appears to be missing both the "3 Day Rescission Notice" and the "All States Home Improvement Bonus Plan" document. Beltz does not address the latter but claims in his affidavit that he did not receive the "3 Day Rescission Notice" document.

As to the actual contract language, All States argues that language in the contract proves that Beltz received the "3 Day Rescission Notice" document. On the untitled document numbered "Page 3 of 6," there is a paragraph referencing "Acceptance of Proposal." Within that paragraph is the following language:

> "The owners may cancel this transaction at any time to midnight of the third business day after the date the owners sign this contract. See an attached notice of rescission form for an explanation of this right. The owners acknowledge receiving a copy of the Notice of Rescission Form. The owners acknowledge a receipt of a copy of this agreement and the terms and conditions."

13

We have also reviewed three affidavits filed by the parties as exhibits to the motion for summary judgment and response. Beltz filed an affidavit stating that he never received a copy of the notice of written rescission and was not told by any representative that his rescission was required to be in writing. He specifically stated, "The contract documents provided to me did not include such a requirement and further no written notice of recission was attached to the contract as has been later claimed." He also stated, "[Megan Napolitano-Robe] did not inform me that I could only cancel the contract in writing." In contrast, neither of the witnesses who supplied affidavits in support of All States, Cris Keeter nor Megan Napolitano-Robe, stated specifically that they personally knew the notice was given to Beltz. Both affidavits included identical, conclusory language that simply stated, "A true and correct copy of the written agreement between All States Home Improvement, LLC, and Defendant was attached to Plaintiff's motion for summary judgment as Exhibit D."

In its brief, All States does not contest that Beltz left voicemails for Megan Napolitano-Robe, or that those occurred within three days of executing the contract. Rather, All States argues Beltz' rescission was unlawful because it was not in writing. All States believes that the language in the agreement conclusively establishes that Beltz received the notice of written rescission. But we note that the agreement is unnumbered in parts and incompletely numbered in others. The parties also submitted different versions of the same agreement as exhibits related to the motion for summary judgment, and Beltz' agreement did not contain the "3 Day Rescission Notice." Considering the irregularities in the form of the contract, and the three affidavits submitted by the parties, it is plausible that "reasonable minds could differ as to the conclusions drawn from the evidence" as to whether Beltz received the notice of written rescission requirement. *GFTLenexa*, 310 Kan. at 982. We are required to "resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought." 310 Kan. at 982. In doing so, we conclude that the issue of whether Beltz received notice of a written rescission requirement was a genuinely disputed material fact

14

that should have precluded summary judgment. We need not consider Beltz' additional legal arguments related to his substantial performance of the contract because we find this genuine issue of material fact resolves the issue on appeal.

*Damages*

Beltz also argues the magistrate judge erred by finding no genuine issue of material fact remained as to the damages allegedly suffered by All States. Damage is a required element of All States' breach of contract claim, and thus, the facts proving or disproving the existence of damage are material. See *Stechschulte*, 297 Kan. at 23; *Trans World*, 43 Kan. App. 2d at 490.

Even assuming Beltz breached the contract between the parties, a genuine dispute exists as to whether All States actually suffered any damage. Beltz points out that All States does not claim it completed the contract. And under the agreement, payments were to "begin 30 days from completion of job." Yet, in its petition, and motion for summary judgment, All States' claim was for the entire amount of the contract without any evidence or explanation as to why it was owed the entire amount. All States provided no factual statements, exhibits, or affidavits as part of its summary judgment motion that provided evidence of the actual value of any work that was performed, commissions paid, or supplies purchased. Instead, the affidavits from both Cris Keeter and Megan Napolitano-Robe identically state, "As a result of no written notice of rescission, All States Home Improvement, LLC, ordered custom materials for Defendant's shower bath remodel and paid for labor to commence the project." No further details were provided.

In his response to the summary judgment motion, Beltz stated that "Plaintiff did not order any materials, either custom made or otherwise, until after March 14, 2024, to be utilized in Defendant's home, nor were any products or labor used in Defendant's home." Beltz cited order forms that had been produced in discovery in support of his

15

argument, but those do not appear in the record as part of Beltz' response. In its reply to Beltz' response, All States argued that it provided Beltz with discovery responses showing "$10,757.10 in materials and labor, $5,019.35 in overhead and profit, and over $4,300 in attorney fees and costs at that time." But again, those discovery responses do not appear in the record as part of All States' reply.

It appears both parties may have been in possession of evidence related to the potential damages suffered by All States, but the problem is that none of that evidence was ever considered by the court. The district court made no factual findings as to how it arrived at the amount of damages—it simply adopted the sum pled by All States in its petition. But the contract between the parties did not contain a liquidated damages clause that set the amount of damages upon breach. It is true that "parties may stipulate at the time of contracting to a set damages amount for a breach of that contract, as long as the liquidated damages provision is not a penalty." *Carrothers Constr. Co. v. City of South Hutchinson*, 288 Kan. 743, 754, 207 P.3d 231 (2009). But here, the contract does not contain a liquidated damages provision and All States does not claim that the contract language entitled it to the entire contract price simply because of a breach. Instead, All States argues that it has accrued damages but has failed to put forth evidence of the specific amount and type.

Considering the lack of evidence in the record related to damages, we find that "reasonable minds could differ as to the conclusions drawn from the evidence" as to whether All States suffered damage. See *GFTLenexa*, 310 Kan. at 982. Accordingly, we find that a genuine issue of material fact remained on the issue of damages, and summary judgment on this issue was made in error.

16

We therefore reverse the order of the court granting summary judgment in favor of All States and remand the case for trial.

Reversed and remanded with directions.